## VELNA M. SOLOMON v. MOBERLY LIGHT AND POWER COMPANY, Appellant.

In Banc, May 13, 1924.

1. **PLEADING: Amendment After Verdict and Judgment.** Plaintiff being compelled at the close of the evidence, upon the motion of defendant, to elect upon which of the three counts of her petition she would go to the jury and having elected to stand on the third count, it was not error to permit her, after verdict and judgment in her favor, to amend said third count by adding thereto the allegation of negligence contained in the abandoned first count, where no demurrer was filed or other objection made to the petition and the case was tried throughout as it would have been had said third count contained the words inserted therein by the amendment.

2. **NEGLIGENCE: Invitee: Trespasser: Licensee.** An electrician who was requested by his neighbor, whose brother had been found lying under an automobile in his near-by garage and brought to her house in an unconscious state, to go to the garage and ascertain how the brother was injured, such information being necessary to a proper treatment of the injured man, and when there took hold of an electric wire or lamp cord, to which was attached a bulb which he attempted to use in examining the car, and which was not properly insulated, and which had come in contact with another uninsulated wire of 2300 voltage suspended on poles and run through trees outside the garage, and was thereby killed, was not a trespasser or licensee in the garage, but an invitee, and entitled to the same protection against the negligence of the light company as the neighbor would have been had she herself gone to the garage for the same purpose.

Solomon v. Moberly Light & Power Co.

3. ——: ——: **Contributory.** An invitee, who did not know, and who had no reason to anticipate, that the electric lamp cord, to which was attached an incandescent bulb, and which he used as an aid in ascertaining the cause of the injury to the unconscious keeper of the garage in which the wire was used for similar purposes, and which ordinarily carried a voltage of 110 volts, had come in contact, outside of the garage, with a non-insulated wire carrying 2300 volts, and was thereby killed, was not guilty of contributory negligence.

4. ——: **Electric Wire: One Hundred and Ten Volts: Installed by Owner of Building.** Conceding that if the invitee was killed by an uninsulated electric wire carrying only 110 volts, plaintiff cannot recover damages for his death if the electric equipment in the garage where the wire was in use was installed, owned and controlled by the garage keeper and not by defendant light company, that issue was properly submitted to the jury by an instruction which required the jury to find that defendant negligently permitted said wire to come in contact with another uninsulated wire of 2300 voltage at a point at which defendant had sole control of both wires.

5. ——: **Inference Upon Inference.** Where there is substantial circumstantial evidence connecting the negligence of defendant with the electrician's death, a verdict for plaintiff, based upon proper instructions requiring the jury to find that such negligence was the cause of his death, is not based upon conjecture, or the placing of presumption upon presumption, or the drawing of inference from inference.

Headnote 1:   Pleading, 31 Cyc. 406.   Headnote 2:   Electricity, 20 C. J. sec. 40;   Negligence, 29 Cyc. 456.   Headnotes 3 and 4:   Electricity:   3, 20 C. J. sec. 66;   4, 20 C. J. sec. 69.   Headnote 5:   Evidence, 22 C. J. sec. 27.

Appeal from Randolph Circuit Court.—*Hon. Allen W. Walker*, Judge.

AFFIRMED.

*Willard P. Cave* and *Hunter & Chamier* for appellant.

(1) It was error for the court to permit plaintiff to amend one month after the verdict had been returned and judgment entered, the third count of her petition

(the one she elected to stand on), by adding thereto the assignment of negligence contained in her first count (the count she had abandoned by her election). Chaput v. Bock, 224 Mo. 73; Carr v. Moss, 87 Mo. 447; Singer Manufacturing Co. v. Givens, 35 Mo. App. 602; 21 R. C. L. p. 577; Habel v. Ry. Co., 140 Mo. 159, 165; 31 Cyc. 404; Renfro v. Prior, 22 Mo. App. 403; Garton v. Canada, 39 Mo. 357; Clark v. Spencer, 14 Kan. 398. (2) Deceased was a mere trespasser, licensee or volunteer, and defendant was under no legal obligation other than to do him no willful or wanton harm. This doctrine applies to relieve defendant where the trespass or license is with respect to property of a third person and not to that of defendant. 9 R. C. L. p. 1207; Minneapolis Gen. Elec. Co. v. Cronan, 166 Fed. 651, 20 L. R. A. (N. S.) 816; Henderson v. Ashby, 179 Ky. 507; Cumberland Tel. Co. v. Martin, 116 Ky. 554, 63 L. R. A. 469; Greenville v. Pitts, 102 Tex. 1, 14 L. R. A. (N. S.) 979; Graves v. Washington W. Power Co., 44 Wash. 675, 11 L. R. A. (N. S.) 452; Hickok v. Auburn Light, etc., Co., 200 N. Y. 464; State to use of Stansfield v. Tel. Co., 123 Md. 120, 52 L. R. A. (N. S.) 1170; Lapouyade v. Ry. & Light Co., 138 Fed. 237, 52 L. R. A. (N. S.) 1172; Benson v. Traction Co., 77 Md. 535, 20 L. R. A. 714; Plummer v. Dill, 156 Mass. 426; Purtell v. Phil. & R. Co., 256 Ill. 110, 43 L. R. A. (N. S.) 193. (3) Plaintiff cannot recover because deceased was guilty of contributory negligence, and because he voluntarily assumed a position of danger, the hazards of which he understood and appreciated, and he died from a risk incident to such position. 9 R. C. L. p. 1202; Carroll v. Grand Ronde Electric Co., 6 L. R. A. (N. S.) 290; Frauenthal v. Laclede Gaslight Co., 67 Mo. App. 1; Wood v. Diamond Electric Co., 185 Pa. 529; Anderson v. Light Co., 64 N. J. 665. (4) If deceased was killed by 110 volts and by reason of the defective electric equipment in the garage, plaintiff cannot recover, because the electric equipment in the Ricker garage were installed, owned and controlled by Ricker

and not defendant. 9 R. C. L. p. 1204, sec. 15; Minneapolis G. E. Co. v. Cronan, 166 Fed. 651, 20 L. R. A. (N. S.) 816; Hoffman v. L. L. Co., 91 Kan. 540, 50 L. R. A. (N. S.) 574. (5) It is not permissible to undertake the establishment of a fact by several presumptions; an inference cannot be based on an inference, nor a presumption on a presumption to support a verdict; and since this case was thus established, the verdict cannot stand. State ex rel. Mo. Pub. U. Co. v. Cox, 250 S. W. 551; Hays v. Hogan, 273 Mo. 1, 25; State v. Lackland, 136 Mo. 26; Glick v. Kansas City, 57 Mo. App. 97; Haynie v. Packing Co., 126 Mo. App. 88; Wright v. United Com. Travelers, 188 Mo. App. 457; Cahill v. Railroad, 205 Mo. 393, 404; Hamilton v. Railroad, 250 Mo. 715, 722; Swearingen v. Railroad, 221 Mo. 644, 659; Yarnell v. Railroad, 113 Mo. 570, 579; Hamilton v. Southern Railroad Co., 250 Mo. 714; United States v. Ross, 92 U. S. 714; Whitesides v. Railroad Co., 186 Mo. App. 608; Manning v. Ins. Co., 100 U. S. 697.

*Redick O'Bryan* and *John T. Barker* for respondent.

(1) There was no error in allowing plaintiff to amend her petition to conform to the proof which had gone in without objection. Secs. 1274, 1277, R. S. 1919; Lamb v. Railroad, 33 Mo. App. 492; Acton v. Dooley, 16 Mo. App. 446; Insurance Co. v. Smith, 117 Mo. 297; Sikes v. Turner, 247 S. W. 806; Samples v. Railroad, 232 S. W. 1051. (2) Sending unusually high voltage into the Ricker garage was the direct and proximate cause of the death of Harry Solomon, and it is immaterial that the drop cord and socket was not the kind that should have been used, if such was the case. Vessels v. Light Co., 219 S. W. 87; Campbell v. Railroad, 243 Mo. 151. (3) Deceased was in the garage with the knowledge and consent of the owner, and not in any sense a trespasser as to the defendant. Defendant knew that the wire in this garage was being used every day by some one. Johnson v. Light Co., 232 S. W.

1098.  (4)   The negligence in this case consisted in permitting the destructive force to escape from defendant's high voltage wires, although it found its victim on other premises.   (5)   Evidence that wires were so slack that they might, or could, come together is sufficient, without actual showing that they did come together, when death occurs.   (6)   It is not necessary that defendant should have anticipated that the very injury in question would occur, but it is sufficient that the circumstances are such that some injury would be likely to result from its negligence in sending such heavy voltage in the Ricker garage, and that the death of Solomon did result therefrom, and that it appears to be a natural and proper consequence thereof.

RAILEY, C.—On August 31, 1921, plaintiff filed in the Circuit Court of Randolph County, Missouri, her petition against the Moberly Light & Power Company to recover damages in the sum of $10,000 on account of the electrocution and death of her husband, Harry Solomon, through the alleged negligence of said defendant company.   The case was tried in the above county before a jury and, on February 21, 1922, a verdict was returned in favor of plaintiff for the sum of ten thousand dollars and judgment was entered accordingly.   Motions for a new trial and in arrest of judgment were filed and overruled, and the cause duly appealed by it to this court.

Plaintiff's petition contained three counts, but, at the conclusion of all the evidence, she was required by the court, at the instance of defendant, to elect on which count she would proceed to trial.   She accordingly elected to stand on the third count, which charges, in substance, that on and prior to August 8, 1921, defendant was manufacturing and furnishing electricity for light and power to its customers at Moberly, Missouri; that it owns and operates in said city a system of wires strung on poles in the streets of said city by which means electric current is carried over, upon and through said streets from defendant's plant to its various customers, as aforesaid;

and maintains certain wires on poles, which wires run
along and over, among others, Fulton Avenue and North
Ault Street in said city; and on and to the garage of
Oliver Ricker, at the residence of Mrs. Maude Moore, at
651 North Ault Street in said city; that she was married
to said Harry Solomon, on November 15, 1908, and con-
tinued to live with him as his wife, until August 8, 1921,
when he was killed as hereafter stated; that she is now
his widow and as such brings this suit; that on said 8th
day of August, 1921, plaintiff's said husband was lawfully
on the premises described as aforesaid, and used by said
Ricker as a garage; that while in the latter, and in the ex-
ercise of due care, he came in contact with the said wires
of defendant; that while holding an electric light attached
to a long cord, he was shocked, burned and killed as fol-
lows, to-wit:

That on said date, and for a long time prior thereto,
defendant maintained and operated two sets of electric
wires, one with a heavy voltage and one with a less volt-
age; that the two wires carrying the different voltage
were maintained on the same poles, and in passing over
Ault Street said wires were maintained through certain
trees along the side of said street; that by reason of said
wires running through said trees, the limbs thereof came
in contact with said wires, and the insulation on the latter
became worn and defective, so that the wire containing
the heavy voltage, on account of such defective insulation,
came in contact with the wire containing the less voltage,
which had also lost its insulation as aforesaid and, as a
consequence, the wire containing the heavy voltage, in
crossing the wire with the less voltage, or the limbs com-
ing in contact with said wires, communicated such heavy
voltage to the other wire; that on said August 8, 1921, the
said Mrs. Maude Moore was a customer of the defendant,
and the latter furnished electric lights for the said
Ricker's garage; that defendant's wires entered said
garage and it had caused to be used a long extension cord
with an electric light bulb at the end of same, so that it
could be moved back and forth throughout said garage

as desired; that plaintiff's husband had frequently been in said garage, and knew the use that was made of said extension cord and electric light bulb; that plaintiff's husband knew said electric light, while so used in said garage, carried a small voltage, and was not dangerous to use; that he did not know said wire had become crossed with one of defendant's other wires carrying a heavy voltage; that on the above occasion plaintiff's husband went into said garage at about 9:30 o'clock in the evening and, seeing said extension cord with the light attached thereto lying upon the floor, and without knowledge on his part that the same was dangerous as aforesaid, picked it up for the purpose of using same, and a heavy voltage of electricity, which was coming through said cord, without the knowledge of plaintiff's husband, suddenly shocked, burned and killed him; that plaintiff's husband came to his death on account of the negligence and carelessness of the defendant as heretofore set forth, etc.

Defendant's first amended answer admits that it is a corporation, and denies every other allegation in plaintiff's petition. It pleads contributory negligence upon the part of plaintiff's husband, and further alleges that the wiring in the Ricker garage was defective and dangerous, and was not installed by defendant, but by said Oliver Ricker in a careless, negligent and defective manner for his own use in lighting said garage, all of which dangerous and negligent construction was fully known by said Harry Solomon. It further alleges that all electrical wiring done by it ceased upon the delivery of current at the point of entry to a customer's premises, and does not extend to the wiring inside of any inclosures, dwellings or garages, which are constructed by the respective owners or occupants of said building, dwelling or garage; that the same are not subject to the control of defendant company, etc.

The reply is a general denial of the new matter pleaded in said answer.

As appellant is insisting that its demurrer to the evidence at the conclusion of the whole case should have

been sustained, it becomes necessary to determine whether plaintiff produced substantial testimony on the merits of the controversy tending to show that she was entitled to recover in this action. It is appropriate, however, to say in this connection, that it is not the province of this court to pass upon the weight of the evidence.

The plaintiff offered substantial testimony tending to show that defendant, on and prior to August 8, 1921, was engaged in manufacturing and furnishing electricity for light and power to its customers and consumers in Moberly, Missouri; that it owns and operates in said city a system of wires strung on poles erected in the streets of said city, by which means electric current is carried over and through said streets from defendant's plant to its various customers as aforesaid; that it maintained certain wires on poles which ran along and over Fulton Avenue and North Ault Street, as well as other streets in said city, to the meter at the residence of Mrs. Maude Moore, at 651 North Ault Street in said city. Mrs. Moore testified on cross-examination that defendant had nothing to do with the wiring of the Ricker garage; that her brother, Oliver Ricker, and Mr. Dent did the wiring in the garage about one year before the date of trial.

On cross-examination of L. C. Sevier, a witness for defendant, it was developed that the meter is installed in the house to measure the current the customer uses; that the company wires down to the meter, and the customer can do what he pleases with the current beyond the meter; that these meters are read once every month.

The evidence shows that there are ten trees on the east side of Ault Street in the 700 block, and that the wires heretofore mentioned ran through these trees. This had been true for several years before deceased was killed. Ault Street runs north and south and the Ricker house was located about the center of the 600 block. The plaintiff and deceased lived at 641 North Ault Street, near the Ricker home in the 600 block. The 700 block is north of the latter, and the trees through which the wires ran were on the east side of same. There were two wires on a

pole in block 600, where Ricker lived, that furnished light. There were four wires in the 700 block on the cross arms. It appears from the evidence that the voltage of the two outside wires in the 700 block is 2300, while the two inside wires of said block carry a voltage of 110 for lights in residences. The wires carrying a voltage of 2300 run to the transformers, and the voltage is then reduced from 2300 to 110 for residence lights. The 2300 is called the primary wire and the 110 a secondary wire.

The condition of wires as to insulation, running through trees and coming in contact with limbs thereof, is set out in appellant's statement of the facts as follows:

Mr. Guthrie testified that in passing along Ault Street in the 700 block he had noticed "a flickering sensation upon the trees during the night." He said "probably the wind would be blowing or storming and a flickering sensation would be up in those trees like you touched two electric wires together," and he said that he had noticed this for a year or two before the death of Solomon. He also said that during this time the limbs of those trees could touch all four of the wires in that block in case the limbs would get broken and fall over; that these were green growing trees; that the wires were in a sagging condition, so that when windy they would swing back and forth, and that he had observed the wires prior to the death of Solomon swing and touch the trees between the poles.

The record shows that there were places where the insulation was off for a distance of from one inch to fourteen or sixteen inches on primary and secondary wires in the 700 block on Ault Street where they ran through the trees, and at a number of these places the wires were bare, and there were also places on the limbs where the bark had been rubbed off; that the wires were so loose in the trees in the 700 block that the wind could blow them together; one witness said that he did not know how long the insulation had been off, but he had seen the fire playing in the trees for four or five years; another said he had seen fire in these trees two nights be-

fore deceased died. These trees through which the wires ran in the 700 block were trimmed the day after deceased died; Hopson, one of plaintiff's witnesses, testified that since these wires were strung side by side, the wind alone could not bring them together without the assistance of the limbs.

Mr. A. J. Evans, an electrician of fifteen years' experience, who lived at Moberly, testified that there was sufficient sag between the poles from Madison Avenue to Fulton to allow those wires to touch in the middle of the block. He further testified as follows:

"Q. Now, have you occasion to examine those lines running through and along those trees you have described with reference to insulation, whether or not it is worn? A. The insulation is worn off in places through those trees.

"Q. In how many places is the insulation worn off in those trees? A. Some places it is worn off more than others; some run all the way from six inches to a foot in different places.

"Q. Is that on the primary or secondary wires or both? A. On both.

"Q. Assuming that a wind is blowing and causes the limbs to move back and forth, would that throw these wires together there? A. Yes, it could.

"Q. Now, assuming that a limb of a growing tree would fall across two wires, would that carry the current from one to the other? A. Yes, sir.

"Q. And in case a limb was across a 2300-voltage wire and a 110-voltage wire, would that carry the 2300 into the 110? A. Yes, sir."

The testimony of Mr. Evans, supra, was corroborated by that of witness Hopson.

Without elaborating the subject further, we think there was ample substantial testimony on the part of plaintiff tending to show that, with the conditions as above described, it was a question for the jury as to whether the deceased came to his death on account of a voltage in the wire of the garage in *excess* of 110 ordi-

narily furnished for electric lights. There was a conflict in the testimony on this subject, and we are concluded by the verdict of the jury in respect to same.

Turning to the other branch of the case, the evidence tends to show that deceased was an electrician, was familiar with the proper method of installing wires in houses, and was familiar with the danger of being shocked by the use of electricity. He was a neighbor of Mrs. Moore's and received an emergency call from her home for assistance. Mr. Oliver Ricker, the brother of Mrs. Moore, was found under an automobile in his garage unconscious. A controversy arose among those who came to assist Mrs. Moore in her distress, as to whether the car had run over Ricker or whether he had been injured by electricity or in some other manner. After Ricker had been removed from under the car to another room, and was still unconscious, Dr. Megee arrived, and a discussion arose as to what caused Ricker's condition. The deceased was of the opinion that Ricker had been injured by the car, but the doctor said he looked like a man who had been gassed. The deceased, in order to ascertain the cause of Ricker's injury, started to the garage, followed by some of the others present. Dr. Megee said that before deceased started to the garage he said to him, "Don't go yet, Harry, and wait a minute." This was about all that was said by the doctor, and there is nothing in the evidence to indicate that deceased heard or understood what the doctor had said, as the latter did not speak very loud. The deceased, at the time of his death on August 8, 1921, was in his sock feet and wearing a hickory shirt. The evidence tends to show that he entered the garage, held the socket attached to a cord, in his right hand, with an electric light bulb at the end of same; that he looked under and around the car, and suddenly walked in front of the automobile, or thereabouts, stiffened up, suddenly gave a kind of gurgling sound, continued to hold onto the socket, fell over against the north side and died. The evidence also tended to show that

deceased had walked across the lawn with dew on the grass; that he was standing on the dirt floor of the garage when killed, and that his wife and Mr. Guthrie each received a shock when they touched his clothing.

The testimony of plaintiff's expert witnesses tended to show, that the death of deceased could not have been produced by a voltage of 110, under the circumstances aforesaid, and that in their opinion he was killed by a voltage greatly in excess of 110. There was conflicting testimony upon this subject.

The court gave instructions to the jury, modified some of those asked by defendant, and refused other instructions requested by appellant.

The rulings of the court during the progress of the trial, and such other matters as may be deemed important, will be considered in the opinion.

I.   Under proposition one of appellant's "Points and Authorities." it is said: "It was error for the court to permit plaintiff to amend one month after the verdict had been returned and judgment entered,

**Amendment After Verdict.** the third count of her petition (the one she elected to stand on), by adding thereto the assignment of negligence contained in her first count (the count she had abandoned by her election)."

Appellant made no objection to the introduction of evidence under either count of petition on the ground that defendant had not been charged with either actual or constructive knowledge of the unsafe and negligent condition of said wire. Nor was a demurrer filed as to either count of said petition. A number of witnesses testified in behalf of plaintiff, without objection, as to the negligent condition of the wires, and as to the length of time they had been in that condition. In other words, the case was tried throughout, as it would have been had said count three contained the language inserted by said amendment. The plaintiff, under the circumstances aforesaid, was entitled under Sections 1274 and 1277,

Revised Statutes 1919, to have her petition amended to conform to the facts proven, and the court committed no error in permitting it to be done. Even if the petition had not been amended below, and leave had been asked to amend it here, we would have followed the settled practice of this court by treating the petition as amended, and disposing of the case accordingly. [Ehrlich v. Mittelberg, 252 S. W. l. c. 676 and cases cited; Morton v. Lloyd Const. Co., 280 Mo. l. c. 375-6, 217 S. W. l. c. 834; State ex inf. v. Clardy, 267 Mo. l. c. 381, 185 S. W. l. c. 187; State ex rel. v. McQuillin, 246 Mo. l. c. 594, 151 S. W. 444; Baker v. Railroad, 122 Mo. l. c. 547-8; Darrier v. Darrier, 58 Mo. l. c. 233.]

In the recent case of Ehrlich v. Mittelberg, 252 S. W. l. c. 676, in discussing the subject now before us, we said:

"Aside from the foregoing, the facts which appellant insists should have been alleged in petition were proven without the objection, and stood unchallenged at the trial. Under such circumstances, it would not be proper for this court to treat the petition as void, even if it defectively stated a cause of action attempted to be pleaded therein. On the contrary, as respondents would have been entitled in the trial court to amend their petition to correspond with the facts proven, we will treat the petition here as having been properly amended."

The authorities supra were cited in support of above quotation. The foregoing assignment of error is accordingly overruled.

II. It is contended by appellant that "deceased was a mere trespasser, licensee or volunteer, and defendant was under no legal obligation other than to do him no willful or wanton harm," etc.

Licensee.

We have carefully read and fully considered the list of cases cited by appellant in support of above contention. We are of the opinion that the deceased, under the facts in this case, was neither a trespasser, licensee nor volunteer

and, hence, the principles of law discussed in the cases cited, are not applicable to the facts of the present controversy.

Turning to the testimony of Mrs. Maude Moore, the sister of Oliver Ricker, we are informed that she sent her boy to the garage to put away his wheel. The lad soon returned and gave it as his opinion that something was wrong with his uncle, Oliver Ricker, as he was under the car. Mrs Moore ran to the car, and found the head and shoulders of her brother under the car close up to the wheel. She ran outside and called for deceased and Eagan, who were near neighbors. Two other gentlemen, with the above, were the first persons there. The deceased came to the garage and with the assistance of Eagan lifted the car, while the other men dragged her brother out. The latter was taken into the house and, while lying there unconscious, a controversy arose between those present, as to whether he was hurt by the car, or by gas or electricity. The deceased, who was an electrician and familiar with the wiring of the garage, went back to the latter to ascertain how Mr. Ricker had been injured and, while on this errand, was killed. He was there upon the express invitation of Mrs. Moore, for the purpose of aiding and assisting her in a time of emergency. He was not there on any business of his own, but was performing a neighborly act in behalf of Mrs. Moore and solely upon her invitation. We are of the opinion, based on the facts before us, that deceased at the time and place of his death, was an invitee of Mrs. Moore, and was entitled to the same protection against the negligence of the defendant complained of, as would have been accorded to Mrs. Moore, had she been injured while performing the same acts which resulted in the death of plaintiff's husband. [Godfrey v. K. C. L. & P. Co., 253 S. W. l. c. 236; Main v. Lehman, 243 S. W. l. c. 93; Oakley v. Richards, 275 Mo. l. c. 276, 204 S. W. 505; Williams v. Gas & Electric Co., 274 Mo. 1, 202 S. W. 1; Sudmeyer v. Ry. Co., 228 S. W. 64; Campbell

v. United Rys., 243 Mo. 141, 147 S. W. 788; Clark v.
Railroad, 234 Mo. 396, l. c. 418-19, 137 S. W. 583; Glaser
v. Rothschild, 221 Mo. 180-1; Von Trebra v. Gaslight Co.,
209 Mo. l. c. 658 and fol.; Hollis v. Merchants' Assn., 205
Mo. l. c. 520-1; Ryan v. St. Louis Transit Co., 190 Mo.
621; Young v. Waters-Pierce Oil Co., 185 Mo. 634; Geis-
mann v. Mo.-Edison Electric Co., 173 Mo. l. c. 674; God-
frey v. K. C. L. & P. Co., 247 S. W. 451; Beckwith v. City
of Malden, 253 S. W. 17; Grady v. L. L. P. & T. Co., 253
S. W. 202.]

Regardless of the rulings in other jurisdictions, the
law is so well settled in the foregoing authorities of our
own State, in respect to above proposition, that we have
not deemed it necessary to quote therefrom. The above
assignment is accordingly overruled.   .

III. Under  other  propositions  of  appellant's
"Points and Authorities" it is claimed that deceased was
guilty of contributory negligence; that he voluntarily as-
sumed a position of danger and was, at the
time of his injury, meddling without right
with the electrical equipment in Ricker's ga-
rage. The cases cited do not deal with facts similar to
those at bar and, even if they did, we would not hesitate
to follow the rulings of our own courts, as promulgated
in the well considered cases heretofore cited.

**Contributory Negligence.**

We have held in the preceding proposition that the
jury were justified in finding from the evidence that de-
ceased was an invitee at the time and place of his death,
and that he was lawfully there assisting the owners of
the home and garage, and was not there to transact any
business of his own. It will appear from the preceding
statement, that Mr. Ricker was lying in the house un-
conscious, with the question undetermined as to whether
he was run over by the machine or gassed. It was im-
portant to know, in treating Ricker, whether he was in-
jured by the machine or otherwise. The deceased, as
their invited friend, in attempting to aid Ricker and his

sister, went to the garage to try and ascertain the cause of his ailment. He was an electrician, was familiar with the wires in this garage, and had no reason for anticipating, when he went there, that a larger voltage than 110, in the absence of notice to the contrary, was passing over the wires of defendant through its negligence. The issue as to whether deceased was in the exercise of due care when killed, was a jury question and cannot be disposed of here as a question of law. [Geninazza v. R. U. L. A. & Storage Co., 252 S. W. l. c. 419; Oakley v. Richards, 275 Mo. l. c. 277, 204 S. W. l. c. 506; See other authorities heretofore cited.]

IV. Appellant contends that: "If deceased was killed by 110 volts and by reason of the defective electric equipment in the garage, plaintiff cannot recover, because the electric equipments in the Ricker garage were installed, owned and controlled by Ricker and not defendant."

*Contact Outside of Garage.*

The evidence was conflicting as to whether deceased was killed by 110 volts furnished by defendant for residence purposes, or by a voltage greatly in excess of 110. The court properly submitted this issue to the jury in plaintiff's instruction numbered one, and defendant's Instruction Five, as modified by the court. Said instructions read as follows:

"The court instructs the jury that if you believe and find from the evidence that on the 8th day of August, 1921, the plaintiff was the wife of Harry Solomon and that on said date the defendant owned and operated electric wires strung on poles along Fulton Avenue and North Ault Street, near the dwelling and lots of Mrs. Maude Moore and the garage of Oliver Ricker, also situated on said lots, and that said wires consisted of two wires known as primary wires carrying a voltage of approximately 2300 volts, and two other wires, known as secondary wires, carrying approximately 110 volts, and that defendant was furnishing electricity from said

secondary wires to said dwelling house and garage; and you further believe and find that defendant carelessly and negligently permitted its said wires to become un-insulated at certain points mentioned in evidence, and to sag in such manner that they would be caused to touch one another at such points under ordinary conditions of wind and weather or did permit the insulation to become worn from said wires and permit said wires at such places to touch the limbs of trees and the limbs of trees to come into contact with said wires in such manner as to thereby cause a heavy and deadly voltage to pass from said primary wires to said secondary wires, if you so find, and thence into said dwelling house and garage, and to charge the lamp cord and socket mentioned in evidence in said garage with such heavy and deadly voltage, and that the condition of said wires and the insulation thereof and of said limbs had existed for such a length of time, if you so find, that defendant could have discovered and remedied the same by the use of reasonable care and diligence prior to the 8th day of August, 1921; and that on said day the said Harry Solomon entered said garage with the consent of the said Mrs. Maude Moore and did take hold of said cord or socket and was killed by the electric shock, caused by such heavy and deadly voltage, originating as aforesaid, passing from said cord and socket through his body, and that said Harry Solomon was at the time exercising reasonable care for his own safety, then your verdict should be for the plaintiff.''

"5. (As modified). The court further instructs the jury that if you believe from the greater weight of the evidence in this cause, that the equipment and wiring of the extension cord and the bulb and socket attached thereto were of defective, inferior and dangerous construction; and if you further believe from the greater weight of the evidence that no more than the normal amount of current, to-wit, 110 volts, was passing through said electric wire, at said time and place, then the de-

fendant is not liable in this action, and your verdict in such case should be for the defendant.''

These instructions were consistent with each other, and fully informed the jury as to the law in respect to said subject.

V. Under another proposition appellant asserts that: "It is not permissible to undertake the establish-

Inference Upon Inference. ment of a fact by several presumptions; an inference cannot be based on an inference, nor a presumption on a presump-

tion, to support a verdict; and since this case was thus established, the verdict cannot stand.''

This assignment of error fails to comply with Rule 15 of this court, and the authorities construing same. [Rusch v. Valle, 237 S. W. l. c. 112; Frick v. Ins. Co., 279 Mo. 156, 213 S. W. 854; Hanchett Bond Co. v. Palm, 220 S. W. 673.] Upon reading the argument set out in the brief, we presume, that appellant is contending that respondent failed to make out a prima-facie case for the jury, and that the cause was submitted as to defendant's alleged negligence on mere conjecture, etc.

It appears from the testimony of L. C. Sevier; the superintendent of defendant, that the latter wired down to the meter in the Moore home and the consumer was authorized to do as he pleased with the current beyond the meter. The Ricker garage had been wired about one year before the trial and, hence, the jury had the right to infer that defendant was receiving compensation for the electricity used by Ricker as shown by said meter, although the wiring of the garage was not done by defendant. Mrs. Moore simply contracted for the usual voltage of 110 for her home. It is manifest from the record that deceased was killed by the electricity which passed through the meter and from thence to the wire in the Ricker garage. It does not appear from the record that the garage wire was connected with any other current of electricity except that furnished by defendant. Hence, the jury had the right to find from the undisputed

evidence, and not from a presumption, that deceased was either killed by a voltage of 110, which would not have rendered the defendant liable, or he was killed by an electrical current whose voltage exceeded 110. The jury found under proper instructions of the court, that deceased was not killed by a voltage of 110. The plaintiff produced substantial evidence tending to show that defendant's wires running through the trees in the 700 block were permitted to sag; that in places near the trees the insulation had worn off; that the green limbs of the trees when the wind was blowing were sufficient to cause the 2300 voltage wire to come in contact with the wire of 110 voltage, and communicate to the latter a part at least of the 2300 voltage in excess of 110; that the above conditions had existed for a sufficient length of time to impart notice to defendant; that sparks had been seen flowing from the wires in said trees for some time before the death of decedent. The foregoing facts, presented to the jury a typical case of strong circumstantial evidence, upon which they were warranted in returning a verdict for plaintiff, based upon proper instructions.

In Conner v. Railroad, 181 Mo. l. c. 411, Fox, J., in considering a fire case, said:

"If there is substantial evidence tending to show that an accident occurred in any one of two or more ways, or any other number of ways, while the burden rests upon the plaintiff to establish such cause of the accident as would render the defendant liable, *it by no means presents a case of mere conjecture; but is a question of fact, which should be submitted and determined by the triers of the facts. We only enter the field of conjecture in the absence of proof; when proof enters, conjecture disappears.*"

The clear and forceful statement of the law by Judge Fox in the above case meets with our approval. The contention of appellant in respect to above assignment is untenable and overruled.

VI.   We have carefully examined *all* the other questions raised and discussed in the briefs, and have reached the conclusion that defendant received a fair and impartial trial before an unprejudiced jury; that the verdict returned is sustained by substantial testimony; that the instructions given by the court are correct, and that no error was committed during the progress of the trial of which the appellant can legally complain.

Conclusion.

The judgment below is accordingly affirmed. ·

PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted as the opinion of Court in Banc.   All of the judges concur, except *Walker, J.,* who dissents.