MARY BEULAH FOX, Administratrix of the Estate of LLOYD FOX, v. MISSOURI PACIFIC RAILROAD COMPANY, Appellant, a Corporation.—74 S. W. (2d) 608.

Division One, September 18, 1934.

*Thomas J. Cole, Montgomery & Rucker, A. L. Shortridge* and *Ragland, Otto & Potter* for appellant.

*W. W. McCanles* for respondent.

986

ATWOOD, P. J.—This is an appeal from a judgment against the Missouri Pacific Railroad Company for $10,000 in an action for damages for death of Lloyd Fox, deceased husband of Mary Beulah Fox, administratrix, brought in behalf of his widow and two minor children.

The action was based on the death by wrongful act statute of Kansas and on Section 66-227 of the General Statutes of Kansas, 1923, which required railroad companies operating within the State to keep in good repair good and sufficient crossings where such railroads crossed public highways.

After pleading the statute in full plaintiff further alleged in her petition "that on the 4th day of December, 1930, and for more than thirty (30) days prior thereto, the said defendant carelessly and negligently failed to provide and maintain and keep in good repair a good and sufficient crossing on the public highway leading over and across the defendant's tracks at Greeley, Kansas, as aforesaid; that on said crossing as aforesaid, the defendant carelessly and negligently allowed an opening and space to be and exist between one of the defendant's rails and planks in said crossing and said plank to be from one-half inch to an inch lower than the rail, which was dangerous for the public to travel over and upon; that the space between the rails was not sufficiently paved or filled with plank and said plank was not on the same grade as the track, which made said crossing as required by the aforesaid Statute of the State of Kansas, and in direct violation thereof; that the defendant carelessly and negligently caused, allowed and permitted a space between the rail and one of the inner planks adjoining said rail to be wide enough for the heel of a man's shoe to catch therein, and that on the aforesaid day, the plaintiff's deceased husband was walking across said crossing, as aforesaid, and caught his shoe in said space, described aforesaid, and

said shoe and said deceased became fastened and caught therein and he was unable to remove said shoe or foot, or to extricate same, or to extricate himself therefrom, and while so caught and fastened therein, as aforesaid, one of the defendant's trains passed thereover, ran into and collided with and struck said deceased, before he could extricate himself, and, as a direct result of the injuries sustained, he died." A similar charge of negligence was then pleaded as a common-law count.

Defendant's answer was a general denial. At the close of plaintiff's case and again at the close of the whole case defendant filed a general demurrer to the evidence which demurrers were overruled. No withdrawal instructions were requested.

The evidence shows that Main Street, where the accident occurred, runs due north and south, that the railroad track crossed it from the northeast to the southwest, and that this crossing was much used by the public. The testimony of Mary Beulah Fox shows that her husband was thirty-two years of age at the time of his death; that he left surviving, his widow, respondent herein who was about twenty-five years of age, and two infant children of the ages of two and five years, respectively; that he was a farmer and tended a small farm within or near the corporate limits of Greeley, Kansas; that about seven o'clock on the evening of December 4, 1930, the deceased, Lloyd Fox, left his farm home and that she never saw him alive thereafter.

The testimony of Charles Martin tends to show that on December 4, 1930, and for about forty days prior thereto, he was living with and employed by the deceased, Lloyd Fox; that on the night of the 4th of December, 1930, he last saw Mr. Fox when he left his home about 6:45 P. M.; that while at supper that evening the deceased said that he had left a singletree at "Jack's Corner," and that if it kept on raining the creek would rise and he would have to get it before it washed away; that "Jack's Corner" was east and north of the aforesaid crossing near which deceased's lifeless body was later found.

A. S. Kelsey testified that he carried the mail to the Missouri Pacific depot and from the depot to the postoffice in Greeley, Kansas; that he was at the Missouri Pacific depot at 7:15 P. M., on December 4, 1930; that at that time he saw the deceased at the depot platform, which was one block west and one block south of the crossing in question; and that the deceased was walking east along the railroad platform, but that the witness never saw him leave the platform and did not know which direction he went thereafter. He testified that the deceased said: "I left a singletree down at Jack's Corner, and I had better go down and get it before anybody picks it up." He further testified that a through passenger train passed Greeley, Kansas, going southwest due at 7:17 P. M., on December 4th, 1930; that the engine headlight was burning and the regular station and crossing signals were sounded; that the deceased had about enough time to go

from the depot to the crossing in question between the time he saw him at the depot and the time the train passed the crossing. There is no evidence that deceased was thereafter seen by any one on the evening of December 4, 1930, nor is there any evidence that any other train passed over that crossing until after the deceased's mangled body was found the next morning.

The deceased was found dead about five or six o'clock on the morning of December 5, 1930. His body, cold and stiff and minus the right foot, was lying about fifty feet southwest of the railroad crossing in question. It showed abundant evidence of having been struck by some powerful force. The right shoe of the deceased with the foot in it was found wedged between the south rail over the street crossing in question and the first plank inside the rail at a point a little south of the middle of the crossing. The shoe was pointed toward the depot in a southwesterly direction. The evidence showed that in order to reach the point where the deceased said he was going he would have to travel northeast to a point beyond and over the crossing.

A number of witnesses testified that there was a space between the south rail of the defendant's track and the inner crossing plank next to it which varied, according to the opinions of the witnesses, from two to four and one-half or five inches, that this plank was worn and sloped toward the rail, that it was about an inch lower than the rail and that the weather that night was dark and rainy. There was also evidence that a space of two inches was about the standard space between such inner plank and the rail and all that was necessary for the proper operation of trains over such crossing. Some of the witnesses testified that the space between the rail and crossing plank was sufficient for the insertion of an ordinary foot without much effort, while others testified that a foot would have to go in at an angle. There was evidence that some time before at this same crossing a man passing thereover accidentally slipped his foot between a plank and a rail and had to remove his foot from his boot in order to extricate himself. Also, a horse had been injured on that crossing by reason of his foot slipping and becoming wedged between one of the planks and a rail.

The only errors assigned by appellant are that the court erred in overruling defendant's demurrers to the evidence and in submitting the case to the jury in behalf of plaintiff upon an instruction on the measure of damages only.

The burden of appellant's contention as to the action of the trial court in overruling defendant's demurrers is that "the verdict of the jury was based, and had to be based, upon pure guess and speculation." Counsel for appellant say the only legitimate inference the evidence, either direct or circumstantial, authorized was "that there was a space between the rail and the crossing plank sufficient in width to make the same dangerous to persons crossing the track." After a

careful study of the whole record we are satisfied that these conclusions are unwarranted.

The evidence shows that "Jack's Corner" was located north and east of and practically at this crossing. From the above-narrated testimony as to the deceased's expressed destination the jury might legitimately infer that he would pass over this crossing. There is direct compelling evidence that he was there when death overtook him. It is conceded that his right foot and shoe were found so firmly wedged between the south rail at the crossing and the inner plank next to it that they were removed only with great difficulty and the application of force. This foot showed no evidence of having been crushed or cut off. The lower part of the ankle joint attached to the foot and the upper part of the same joint attached to the body presented smooth exposures of the bones with stretched tendons and ligaments attached to each, thus mutely showing that the body had been pulled and not cut or crushed from the foot at the ankle joint. These physical facts are inconsistent with appellant's suggestion that the passing train forced the foot between the plank and the rail, and at the trial defendant's counsel admitted that "his foot was pulled off." Furthermore, the deceased's body, excepting this foot, was found stiff and cold and his clothing soaked with rain the next morning about fifty feet south and west of the crossing in a pool of coagulated blood. The entire body was mashed, broken and crushed. Blood bespattered a fence some fifteen feet south of the crossing, and brains were scattered clear over the railing sixty feet away. The evidence was unmistakable that deceased's body was torn from the right foot and hurled for some distance down the right of way west of the crossing and toward defendant's depot.

We have already adverted to the fact that but one train was shown to have passed over this crossing from the time deceased was last seen walking east on the depot platform until his body was found stiff and cold early the next morning. This was defendant's fast train known as the "Rainbow Special" traveling in a southwesterly direction and did not stop at Greeley. Counsel for appellant suggest that deceased may have attempted to cross the track immediately in front of the approaching train, which would convict him of contributory negligence as a matter of law. There is no direct or circumstantial evidence of such a situation and the law of Kansas, as well as the law of Missouri, is to the effect that through the love of life and the instinct of self-preservation, deceased was presumed to have exercised ordinary care at the time and place. [Dewald v. Kansas City, Ft. S. & G. Railroad Co., 44 Kan. 586; C., R. I. & P. Ry. Co., v. Hinds, 56 Kan. 758; A., T. & S. F. Railroad Co. v. Hill, 57 Kan. 139; Railroad Co. v. Gallagher, 68 Kan. 424; Stewart v. Laclede Gas Light Co., 241 S. W. 909; Newell v. Boatmen's Bank, 216 S. W. 918, 279 Mo. 663.] At the trial counsel for defendant even went so far as to say: "I might say here that we are not disputing that this man was

killed by a railroad train and that at the time or immediately before he met his death, his foot was in a crack between the board and the rail of the track.''

Counsel for appellant also lay great stress upon the fact that deceased's right foot and shoe, found wedged between the rail and plank, pointed in a southwesterly direction, and from this they argue that he was walking up the track toward the depot and not crossing over the tracks. The evidence showed that this crossing was about seven hundred feet east of defendant's depot. A sidewalk extended east from the depot connecting with a sidewalk on the west side of Main Street which sidewalk extended no farther north than about fifty feet south of this railroad crossing. ''Jack's Corner'' was immediately north and east of the railroad crossing which was set diagonally with Main Street. The witness who last saw the deceased alive said that he was walking east on the depot platform at about 7:15 o'clock and said he was going to ''Jack's Corner'' to get a singletree. This witness said that about five or six minutes later the ''Rainbow Special'' came through in a southwesterly direction. In the time estimated the deceased could have reached his destination, placed his singletree in a safe position or failed to find it, and started on his return trip home. The night being rainy and dark the jury might well infer that he used the sidewalk as far as possible. Whether going north or south over the railroad crossing it presented a diagonal approach. The planks were wet and slick from the rain. The inside plank next to the south rail was worn, sloped toward the south rail, and was about an inch lower than the rail. From all the facts in evidence the jury might well have believed that in passing over the crossing deceased stumbled or slipped upon the projecting rail or sloping plank, or both, so that his foot turned and slipped under the rail and between the rail and plank. In case of such a mishap the direction in which the foot and shoe pointed is no indication that he was not using the railroad crossing in the manner that it was intended to serve the public traveling thereon and thereover.

The jury were legitimately entitled to draw a number of separate inferences from the facts properly in evidence, but we find no inference resting upon inference in the proof. Neither is the verdict open to appellant's criticism that it is based upon ''guess and speculation.'' [Baker v. Chicago, Burlington & Q. Railroad Co., 39 S. W. (2d) 535, 543, 327 Mo. 986; Thompson v. City of Lamar, 322 Mo. 514, 17 S. W. (2d) 960; Solomon v. Moberly Light & Power Co., 303 Mo. 622, 262 S. W. 367, 372; Conner v. Missouri Pacific Ry. Co., 181 Mo. 397, 81 S. W. 145.] Defendant's demurrers to the evidence were properly overruled.

In support of appellant's assignment that ''the court erred in submitting the case to the jury on behalf of respondent by an instruction on damages only,'' counsel say that plaintiff was thereby permitted to go to the jury on two separate allegations of negligence,

to-wit, first, that there was an unreasonable space between the south rail and the crossing plank inside such rail, second, that the crossing plank inside the south rail was from one-half inch to one inch lower than the rail; and that "there was no evidence tending to show that the allegation with respect to the height of the crossing plank next to the south rail had anything to do with or could have contributed in any way to the accident."

It would seem that the specifications above urged do not properly come within the only reference to this instruction appearing in defendant's motion for a new trial, which is, that "the court erred in giving plaintiff's Instruction No. 1 for the reason that said instruction did not properly direct the jury as to the measure of plaintiff's damages and said instruction was erroneous under the law applicable to this case." Nothing short of the gift of divination would have enabled the trial judge to discern in this complaint the grounds of error now urged.

However this may be, we think the pertinent allegations of plaintiff's petition hereinabove set forth clearly indicate an intention to state only one act of negligence, namely, that the defendant failed to provide and maintain and keep in good repair a good and sufficient crossing on the public highway leading over and across defendant's tracks at the place in question. Counsel for defendant admitted as much when he said in the course of the trial: "This case is bottomed on a single allegation of negligence, that is, the crossing over the railroad was not constructed in a manner to be reasonably safe for the public crossing over the tracks." Moreover, the instructions given at the request of defendant make no mention of two charges of negligence but clearly submit the negligence pleaded on the theory thus stated by counsel for defendant. However, the evidence shows that the projection of the rail above the plank next to it increased the danger of a pedestrian's foot slipping into the open space between the plank and the rail and becoming fastened beneath the plank and the flange of the rail. This assignment of error must also be overruled.

For the reasons above stated the judgment is affirmed. All concur.