WILLIAM A. MONTAGUE et al. v. MISSOURI & KANSAS INTERURBAN RAILWAY COMPANY et al., Appellants.

Division One, August 27, 1924.

1. **DEMURRER TO EVIDENCE: Most Favorable Testimony Considered.** In determining the question whether or not the case made by plaintiff should be submitted to the jury, the court must take into consideration the most favorable testimony on behalf of plaintiff.

2. **GENERAL DEMURRER.** A general demurrer offered by defendant should be overruled if plaintiff's evidence makes a case either (a) of a common-law negligent rate of speed or (b) under the humanitarian rule.

3. **NEGLIGENCE: At Common Law: Rate of Speed.** Negligent speed at common law is dependent upon all the surrounding circumstances. Nor does an ordinance rate of speed preclude common-law negligence as to speed if the surrounding conditions indicate negligent speed.

4. ———: **At Common Law: Humanitarian Rule: Rate of Speed: Interurban Car Crossing Much-Traveled Highway: Collision with Automobile.** The interurban railway car, traveling southwest, crossed an east-and-west street diagonally. There was evidence that from a point one hundred and fifteen feet northeast of the crossing an automobile could be seen one hundred and fifty feet west of the crossing, and the motorman said that when twenty feet north of the east-and-west street he saw the public automobile, in which plaintiff and his family were passengers, eighty feet west of the crossing, running at the rate of thirty-five miles per hour. There was continuous automobile travel on the east-and-west street, especially on Sunday afternoons, one witness having counted five hundred between three and five o'clock one Sunday afternoon. From the last station stop to the crossing, a distance of three hundred and fifty feet, the railway tracks were in a cut, the embankment on the south being four or five feet high, and on the north about a foot lower. On the north or right-hand side, and fifty-two feet from the east-and-west street, was a house, with trees and shrubbery in the yard, the limbs of the trees not lower than ten feet from the ground, and the shrubbery not high, but interfering to some extent with the view westward. Witnesses, without objection, testified that it was a very dangerous crossing. The motorman testified that the railway car was traveling from twelve to fifteen miles an hour; other facts suggest a higher rate of speed. The motorman testified that it required from eighty to ninety feet to stop the car; experts, that if it had been running twenty miles an hour, it could have been stopped within sixty-five feet. A general order was posted directing motormen to reduce the speed to six or eight miles at the crossing, and the motorman had been notified sixty days previously to slow up to this speed. The railway car struck the east-bound automobile about six o'clock of a Sunday afternoon in August. There was evidence that the driver of the automobile was oblivious of the approaching railway car. *Held, first,* that whether the railway car was being run at a common-law negligent rate of speed was a question for the jury to determine; *second,* these facts also authorized a submission of the case to the jury under the pleaded humanitarian rule; and, *third,* a demurrer to plaintiffs' case, who, passengers in the public automobile, sue the railway company for the death of the wife and mother, also a passenger, was properly overruled.

5. ———: **Humanitarian Rule: Rate of Speed: Obliviousness.** There being evidence that the automobile, traveling east on an east-and-west street, when one hundred and fifty feet west of the crossing, could have been seen by the motorman of the railway car, traveling southwest, when one hundred and fifteen feet from the crossing; that the railway car could have been stopped within a distance of sixty-five feet if running at a speed of twenty miles an hour, and within a much less distance if running at the speed prescribed by the company of six or eight miles per hour; that the driver of the public automobile was looking east and was apparently oblivious of the approaching railway car, and the testimony of the motorman himself that he did not see the automobile until the railway car was within twenty feet of the north line of the street, the jury could well have found that the motorman failed to exercise such care as would have enabled him to discover the automobile and the peril and obliviousness of its driver in time, by the exercise of ordinary care, to have avoided the collision, and the court properly submitted to the jury, under the humanitarian rule, the case of passengers in the public automobile, suing for the death of the wife of the one and the mother of the others, killed in the collision.

6. ———: ———: **Instruction: Ultimate Issue.** The negligence of the driver of a public automobile is not imputable to his passengers, and the law requires the motorman of a railway car, about to cross a public street upon which the automobile is traveling towards the crossing, to discover the obliviousness of the driver and the peril of the passengers as soon as he can by the exercise of ordinary care, and to stop his car as soon as he reasonably can by the use of the instruments at hand and a proper regard for the safety of his own passengers. Where the evidence shows that had the motorman exercised ordinary care he would have seen the peril of the automobile and the collision would have been avoided, and he did not see them and did not exercise a vigilant watchfulness to discover its peril at the dangerous crossing, the company is liable for the death of one of the passengers. [Following Banks v. Morris & Co., 302 Mo. 254.]

7. ———: **Negligent Speed and Humanitarian Rule: Contradictory Assignments.** A plaintiff, who alleges both excessive speed as negligence and facts showing a violation of the humanitarian rule as negligence, can prove and submit to the jury both acts of negligence. The one is not contradictory or destructive of the other.

8. ———: **Excessive Verdict: Death of Wife and Mother: Under Kansas Law.** The suit was brought by the husband and three children for damages for the negligent killing of the wife and mother in Kansas, and the jury returned a verdict for plaintiffs for ten thousand dollars. Under the laws of Kansas the damages

Montague v. Interurban Railway Co.

recoverable are purely compensatory, and must be distributed according to the law of descents and distributions, one-half to the husband and the other half to her children, and the damages are not limited to the minority of the children. The mother was fifty-five years of age, and the mainstay of the family; the husband, ten years her senior and away from home eight months in the year, provided the money for maintaining the home, but upon her devolved the duty of looking after the home and rearing the children; one plaintiff was a minor daughter; another was a son, and although of age, was a part of the family, and received from her a mother's fond care, and she looked after, not only the minor children, but all the family; the husband after her death tried to fill her place with a housekeeper, and the cost of this appears in the record; and under the Kansas law, the amount of recoverable damages in any case depends upon its own peculiar facts. *Held*, that the verdict is not excessive.

Headnotes 1 and 2: **Trial**, 38 Cyc. 1543, 1548. Headnotes 3 to 7: **Street Railroads:** 3, 36 Cyc. 1479; 4, 36 Cyc. 1610, 1616, 1618, 1619; 5, 36 Cyc. 1610, 1617; 6, 37 Cyc. 1560; 7, 36 Cyc. 1578. Headnote 8; **Death,** 17 C. J. sec. 235.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas,* Judge.

AFFIRMED.

*James A. Reed* and *James E. Taylor* for appellant.

(1)   The court erred in overruling defendant's demurrer to the evidence at the close of the testimony.   (a) No cause of action was established, under the first assignment of error, founded on excessive speed.  Long Island Company v. Darnell, 221 Fed. 196.   (b)   No cause of action was established under the fourth assignment of negligence, founded on the humanitarian rule.   Sites v. Knotts, 197 Mo. 712; Guyer v. Railroad, 174 Mo. 344; Lackey v. Railways, 288 Mo. 143; Rublic v. Sandler, 219 S. W. 406; Haines v. Railways, 203 S. W. 632; Stark v. Bingaman, 223 S. W. 946; Allbright v. Joplin Oil Co., 229 S. W. 829.   (2)   The court erred in giving plaintiff's Instruction 2 over the objection of defendant.   (a)   Because upon the evidence no case is made under the humanitarian rule.   (b)   Because the instruction is erroneous in form and omits elements necessary to a recovery under the

humanitarian rule. Knapp v. Dunham, 195 S. W. 1063; Lackey v. Railways, 288 Mo. 143; Kamoss v. Railways, 202 S. W. 434; Draper v. Dunham, 239 S. W. 887; Keele v. Railways, 258 Mo. 79. (3) Under the evidence no cause of action was established upon the first assignment of negligence founded upon excessive speed, and it was therefore error to submit such assignment to the jury. (4) The entire record is insufficient to support a verdict in favor of plaintiffs. Guyer v. Railways, 174 Mo. 344; Sites v. Knotts, 197 Mo. 712; Knapp v. Dunham, 195 S. W. 1063; Lackey v. Railways, 288 Mo. 120. (5) Under the evidence the court erred in submitting to the jury both assignments of negligence, because each is contradictory to and destructive of the other. DeRousse v. Railway, 198 Mo. App. 307; Green v. Railway, 192 Mo. 143. (6) The verdict is excessive. Railway v. Brown, 26 Kan. 458; McLaughlin v. Railway, 73 Kan. 250.

*Kelly, Buchholz, Kimbrell & O'Donnell* and *Lyon & Lyon* for respondents.

(1) The court did not err in overruling defendants' demurrer to the evidence at the close of the testimony. Montague v. Interurban Railway Co., 193 S. W. 935; Brandt v. United Railways Co., 153 Mo. App. 16; Sluder v. Transit Co., 189 Mo. 138; Rush v. Street Railway Co., 157 Mo. App. 504; Bradshaw v. Payne, 111 Kan. 475; Harrington v. Railways Co., 273 Mo. 431. (2) The court did not err in giving plaintiffs' Instruction 2. Simpson v. Wells, 237 S. W. 520; Bybee v. Dunham, 198 S. W. 190; Heryford v. Spitcaufsky, 200 S. W. 123; King v. Railways Co., 204 S. W. 1129; Taylor v. Street Railway Co., 256 Mo. 191; Greer v. Creamery Co., 240 S. W. 833; Volgamott v. Payne, 245 S. W. 592; Lange v. Anheuser-Busch, 241 S. W. 454; Hornbuckle v. McCarty, 243 S. W. 327; Ellis v. Street Railway, 234 Mo. 657; Swinehart v. Ry. Co., 233 S. W. 59. (3) The record in this case is sufficient to

support the judgment. Montague v. Interurban Railway Co., 193 S. W. 935. (4) The court did not err in submitting to the jury negligence under the humanitarian doctrine and excessive speed. DeRousse v. Railway, 198 Mo. App. 307; Taylor v. Railway Co., 256 Mo. 191. (5) The verdict is not excessive. Gas Co. v. Carter, 65 Kan. 569; K. P. Railway Co. v. Cutter, 19 Kan. 83; Railway Co. v. Sternberger, 8 Kan. App. 131; Railway Co. v. Cross, 58 Kan. 424; Railway Co. v. Fejardo, 74 Kan. 314; Chandler v. Gloyd, 217 Mo. 394; Lumber Co. v. Stoddard Co., 131 Mo. App. 15; Bradshaw v. Payne, 111 Kan. 475; Smith v. Southern Railroad Co., 213 S. W. 481; Philadelphia Railroad Co. v. McKibben, 259 Fed. 476; Melish v. Railway Co., 178 N. Y. Supp. 228; Ill. Cen. Railroad Co. v. Johnston, 205 Ala. 10; Standard Oil Co. v. Titus, 187 Ky. 560; Roy v. Kansas City, 204 Mo. App. 332; Roeder v. Erie Railroad Co., 164 N. Y. Supp. 167; P. Lorillard Co. v. Clay, 127 Va. 734; McCreedy v. Fournier, 113 Wash. 351; Hood v. American Refrigerator Fruit Co., 106 Kan. 76; Railway Co. v. Prince, 101 Ark. 315; Redfield v. Railway, 110 Cal. 277; Froeming v. Railway, 171 Cal. 401; Boyd v. Railway, 249 Mo. 110; Standard Oil Co. v. Parkinson, 152 Fed. 681; Rautman v. Chicago Traction Co., 156 Ill. App. 457; Dufleman v. Railroad Co., 130 Ill. App. 105; Union Pac. Railroad Co. v. Dundon, 37 Kan. 1; Valente v. Railway, 158 Cal. 412; Craig v. Railroad Co., 97 Neb. 586.

GRAVES, J.—Predicated upon Kansas statutes, plaintiffs, who are the husband and the three children, seek to recover from the defendants the sum of $10,000, for the negligent killing of Alice Montague, the wife and mother. Mrs. Alice Montague was killed by reason of a collision between an automobile in which she was a passenger for hire, and an interurban car owned and run by the Missouri & Kansas Interurban Railway Company. The petition charges that "defendants E. K. Brown and Charles F. Dinklage were common carriers of passen-

gers for hire, doing business under the name of Baltimore Automobile Livery Company'' and the defendant Missouri & Kansas Interurban Railway Company operated a system of street railway and interurban railways between Kansas City, Missouri, and Olathe, Kansas, which railroad crossed diagonally Forty-third Street in the City of Rosedale, Kansas, at which intersection the automobile was struck by the interurban car, as suggested above.

The petition charges that the individual defendants operated a line of automobiles in Kansas City, Missouri, and in the State of Kansas and Missouri, and particularly operated the automobile in which Mrs. Montague was being carried from the Elm Ridge Golf Club in Johnson County, Kansas, to Kansas City, Missouri, where deceased resided with her family, consisting of herself and the plaintiffs herein. The accident is charged to have occurred in August 16, 1914. General negligence is charged as against the individual defendants, their servants, agents and employees. As to the corporate defendant the plaintiffs charged four specific grounds of negligence as follows: (1) excessive speed under the common law, which law was alleged to be in force in Kansas, per force of a Kansas statute, duly pleaded; (2) ordinance negligence, in that it is charged that the corporate defendant ran its car in excess of the rate of speed limited by the ordinances of the city of Rosedale; (3) failure to sound a whistle as the car approached the crossing, and (4) that form of negligence designated in the books as the violation of the humanitarian rule. The plaintiffs abandoned the second and third grounds of negligence set out, supra, but submitted their case upon the first and fourth grounds, supra.

The answer of the corporate defendant (the only appealing defendant) is very short, and is as follows:

"Now comes defendant Missouri & Kansas Interurban Railway Company, and, separately answering,

denies each and every allegation, matter and thing in said second amended petition contained.

"Further answering, said defendant states that the cause of action plaintiffs set forth in said second amended petition is wholly different from the cause of action set forth in the original petition filed herein by William A. Montague, one of said plaintiffs, and that the cause of action stated in second amended petition was not filed within the time required by the statutes of the State of Kansas, which said statutes are set forth in said second amended petition, on account whereof said plaintiffs are not entitled to maintain the same.

"Wherefore, defendant having fully answered, prays that it may go hence without day, and without cost."

Reply placed in issue all new matter in the answer. Upon trial before a jury the plaintiffs had a verdict for $10,000, upon which judgment was entered, and from this judgment the corporate defendant alone appeals.

I. The following constitute the assignment of errors in the record before us:

"1. The court erred in overruling defendant's demurrer to the evidence at the close of the testimony, (a) because no cause of action was established under the first assignment of negligence founded on excessive speed; (b) because no cause of action was established under plaintiffs' fourth assignment of negligence based on the humanitarian rule.

"2. The court erred in giving plaintiffs' Instruction No. 2, over the objection of defendant.

"3. The court erred in giving plaintiffs' Instruction No. 3, over the objection of defendant.

"4. The entire record is insufficient to support a verdict in favor of plaintiffs.

"5. Under the evidence the court erred in submitting both assignments of negligence, because the one is contradictory to and destructive of the other.

"6.   The verdict is excessive."

The evidence will be left to the disposition of these several assignments of error.   The refusal of the demurrer to the evidence will of necessity require a review of the facts in evidence.

Defendant offered no evidence, and asked no instructions save a demurrer to plaintiffs' evidence. This outlines the case.

II.   As said, the demurrer to the evidence calls for a short statement of the salient facts.   All these facts come from plaintiffs' side of the case, and in passing upon the sufficiency of that evidence they are entitled to have considered those portions of the evidence most favorable to them, if some portions of the evidence are more favorable than other portions.

*Facts of Accident.*

It frequently occurs that witnesses differ as to the speed of a car, or as to other facts tending to shows liability, but in determining the question as to whether or not the case of a plaintiff should be submitted to the jury, the court must take into consideration the most favorable testimony in behalf of such plaintiff.   Thus, if one witness testifies to a negligent speed, and another to a speed which is not negligent, the plaintiff's case cannot be taken from the jury because of this conflict among his own witnesses.   The same is true as to other matters material to a recovery.   This is but hornbook law. Having in view this rule, we will outline briefly the facts.

On Sunday morning, August 16, 1914, the elder Montague, his wife and some members of his family took an automobile, operated by the Baltimore Automobile Livery, from his home in Kansas City, Missouri, for the Elm Ridge Golf Club in Johnson County, Kansas.   About six o'clock in the afternoon, the party took passage for their home and the driver of the automobile (an employee of the Baltimore Automobile Livery) was directed by the elder Montague to drive them to his home in Kansas City. The machine was heavily loaded, having as passengers

William A. Montague, his wife, one of his sons, his daughter and other parties. It was a large Pierce-Arrow car. The route taken was, in part, over Forty-third Street in Rosedale, Kansas. This street runs east and west, or at least did so in the neighborhood of the place of accident. According to a plat in evidence, the Interurban Railway line crossed Forty-third Street at a point where Pearl Street, running north and south, came into Forty-third Street, from the south. Pearl Street, after a jog east on Forty-third, proceeded north from Forty-third. Further east was a north-and-south street called Lloyd Avenue, which crossed Forty-third Street at right angles. The Interurban Railway tracks crossed Forty-third Street, upon an angle of about forty-five degrees, so that the railway tracks ran from the northeast to the southwest at the point of intersection. Where the railway tracks crossed Lloyd Avenue (northeast of the point of accident, which point of accident was about the middle of Forty-third Street) was a station for taking on and discharging passengers. The railway car which struck the automobile came in from the northeast and was going southwest as it crossed Forty-third Street. A passenger was picked up at this station, and the car started up and reached a speed of twelve to fifteen miles per hour in going from Lloyd Avenue station to Forty-third Street. This was the statement of the motorman. In its diagonal course it had to cross that portion of Pearl Street (if it be called Pearl Street) which runs north and south and to the north from Forty-third Street, after the jog which we have mentioned. About one hundred and fifty feet from Lloyd Avenue station the whistle was sounded for Forty-third Street. To the right hand side of the railway tracks, and fifty-two feet north of Forty-third Street stood a house with some trees and shrubbery in the yard. The tracks were in a slight cut of three to four feet. The limbs of the trees were not lower than ten feet from the ground. The shrubs were not high. The roadway (between the curbs) of Forty-third Street was twenty-two feet wide,

and from property line to property line the street was forty feet in width.  There is evidence tending to show that from a point one hundred and fifteen feet northeast of Forty-third Street, an automobile could be seen one hundred and fifty feet west of the crossing.  The motorman said that when twenty feet north of Forty-third Street he did see this automobile eighty feet from the crossing running at the rate of thirty-five miles per hour.  Other evidence shows that it was running rather fast, but not so fast as the motorman says.  Much evidence shows that the automobile was running at fifteen miles before reaching the slight up-grade to the crossing, and on this up-grade the speed fell to eight to ten miles per hour.  The street car was also going slightly up-grade in approaching this crossing.  The motorman says that he used his best efforts and including the contact with the automobile, stopped his car in eighty to ninety feet.  He sounded no whistle after the crossing signal mentioned above.  There is evidence from experts that had run cars over this line that at fifteen miles per hour it could have been stopped within fifty-five feet, and at twenty miles per hour within sixty-five feet.

It is also shown that Forty-third Street was a much traveled street, and especially on Sundays.  Also that this was a very dangerous crossing, and that the corporate defendant had posted a rule requiring its motormen to reduce the speed to six or eight miles per hour because of the dangerous surroundings of this crossing.  This order was in force at the time of this accident.  The motorman on this car had been notified sixty days before the accident to slow up to this speed at the Forty-third Street crossing.

R. A. Montague, a son, was injured in this same collision.  The facts in his case (much the same as here) will be found in Montague v. Missouri & K. I. Ry. Co., 193 S. W. 935.  The trial court sustained a motion for a new trial in that case on the ground that plaintiff's case should not have been submitted to the jury.  In a well

considered opinion by ELLISON, P. J., the Kansas City Court of Appeals reversed the trial court and ordered the $7500 verdict re-instated. Upon the facts in our record we feel constrained to rule that the trial court committed no error in denying the demurrer in this case. Our reasons, on the two theories of the case, we take next.

III.   Under the foregoing facts the contentions of the learned counsel for appellant are (1) that the evidence fails to show common-law negligence as to speed, and (2) fails to show a situation which would make a case under the humanitarian rule. The demurrer offered by appellant was a general demurrer, so that if the plaintiffs' evidence made a case upon either of the above two theories of negligence, such demurrer was properly overruled.

*Excessive Speed: Common Law Negligence.*

(1)   Did the evidence show a negligent rate of speed? Plaintiffs abandoned their ordinance negligence. This left a common-law charge of a negligent rate of speed. Negligent speed at common law is dependent upon all the surrounding circumstances. [Heinzle v. Railway, 182 Mo. l. c. 555; Beier v. St. Louis Transit Co., 197 Mo. l. c. 231; Klockenbrink v. St. Louis & M. R. Ry. Co., 172 Mo. l. c. 690; Harrington v. Dunham, 273 Mo. l. c. 431.]

Nor does an ordinance rate of speed necessarily preclude common-law negligence as to speed if the surrounding conditions indicate negligence. [Harrington v. Dunham, supra, and cases therein cited.]

There is evidence tending to show continuous and great automobile travel upon Forty-third Street, and especially so upon Sundays. One witness says that he counted the automobiles going east and west on Sunday afternoon between the hours of three and five o'clock, and that there were five hundred passing automobiles. The distance from the station on Lloyd Avenue to the intersection at Forty-third Street is estimated at three hundred to three hundred and fifty feet. Before reaching For-

ty-third Street the railway traveled through a cut, the embankment of which was four or five feet high on the left-hand side as you progressed westward, and about a foot lower upon the right-hand side. On the right-hand side was this house, its trees and shrubbery interfering to some extent with the view westward. Witnesses, without objection, testified that it was a very dangerous crossing. The superintendent of the railway was so impressed with its dangerous character that he issued an order to the motormen not to run faster than six or eight miles an hour at this point. The conditions and facts shown authorized the submission of the question of negligent speed.

We might suggest further that whilst the motorman says he was going from twelve to fifteen miles per hour, yet other facts suggest a higher speed and it was for the jury to draw all legitimate inferences from the facts shown. The motorman says it required eighty to ninety feet for him to stop his car at that time. Experts testify that even if it had been running twenty miles per hour, it should have been stopped within sixty-five feet. Whether this car was being run at a negligent rate of speed was clearly one for the jury.

(2) Nor can it be said that there were not sufficient facts to authorize the submission of the case upon the humanitarian rule. The evidence tends to show that the driver of the automobile was driving with his face looking east and apparently oblivious of an approaching car. There are facts from which this jury could well have found that the motorman failed to exercise such care as would have enabled him to have discovered the automobile, and the obliviousness of the driver in time to have avoided the collision by the exercise of ordinary care. According to some of the evidence the automobile, when one hundred and fifty feet west of the crossing could have been seen by the motorman when his car was one hundred and fifteen feet from Forty-third Street, yet the motorman says he did not see the automobile until he was within twenty

*Humanitarian Rule.*

feet of the street line. This fact alone would take the case to the jury upon the humanitarian rule, for under such rule the motorman was obligated to be on the lookout for approaching vehicles at this public crossing. This is, upon this question, as well as upon the rate of speed, a simple case of facts. The law is too well settled to require citations. The demurrer was properly overruled.

IV. Turning to the assignments of error, it will be noted that no complaint is made as to instruction numbered 1 for the plaintiff. This is the instruction which outlined the applicable Kansas law, and which directed the jury that the husband and children were, under predicated conditions, entitled to recover. Absent complaint, we are justified in passing this instruction as one properly declaring the law.

Instructions.

As to instructions, the first complaint is as to Instruction 2 for the plaintiffs, which reads:

"The court instructs the jury that if you believe and find from the evidence that deceased, Alice Montague, was a resident of Missouri at the time of her death, and that William A. Montague, on the 16th day of August, 1914, was the husband of Alice Montague, and that Margaret Montague Hise, Roland Montague and Richard Montague were her children, and if you further find that deceased Alice Montague was riding as a passenger in the automobile mentoned in evidence; that deceased was being transported in said automobile along and over Forty-third Street and across the railway track of defendant Missouri & Kansas Interurban Railway Company, and that said Forty-third Street at said point was a public highway; and if you further find and believe that while upon the defendant's railway track a car operated by said defendant Railway Company collided with said automobile and Alice Montague was thereby killed, and if you further find and believe from the evidence that the motorman in charge of the car of defendant railway company saw, or by the exer-

Humanitarian Rule.

cise of ordinary care could have seen, the automobile aforesaid approaching a place of imminent peril, if so, and starting to cross the track on which said street car was moving, and that said motorman realized, or in the exercise of reasonable care should have realized, if so, that a collision would result if he, the said motorman, did not stop or slacken the speed of said railway car, and that thereafter said motorman could have prevented the injury to deceased by the exercise of ordinary care by stopping or slackening the speed of said railway car in time to avoid a collision with the said automobile, if said motorman had ample time to have so done in a manner consistent with the safety of the passengers on said railway car, if you so find, but that said motorman negligently failed or neglected to do so, and that plaintiffs, or any of them, sustained pecuniary damage, if so, as a result of the death of said Alice Montague, then your verdict shall be for the plaintiffs and against said defendant Missouri & Kansas Interurban Railway Company.''

The first contention is that there was no evidence justifying an instruction upon the humanitarian rule. This we have disposed of, supra, in the ruling upon the demurrer to the evidence.

Next it is urged the instruction ''is erroneous in form and omits elements necessary to a recovery under the humanitarian rule.'' Knapp v. Dunham, 195 S. W. l. c. 1063 and Lackey v. United Railways Co., 288 Mo. l. c. 143, are cited, among other cases. These cases proceed upon the theory that it was necessary for the jury to find that the driver was oblivious of his peril before there could be a finding for plaintiffs. At least this is one of the things suggested in these cases. The doctrine of obliviousness as to peril has undergone a recent review by this court. [Banks v. Morris & Co., 302 Mo. 254, 257 S. W. 482.] Many of the old cases are no longer authority, and such is the situation here. It is well settled that the negligence of the driver in this case is not imputable to the passengers. [Stotler v. Railroad, 200 Mo. 107.]   The

motorman says that he observed that there were passengers in the car. The trouble is that he did not see them soon enough, or as soon as he could have seen them, had he been upon the lookout, as by law he was obligated to be, under the surroundings of this crossing. The rear portion of the automobile was struck, and had he seen the car a little sooner the collision would not have happened. The jury could have found that he could have seen the approaching automobile, and its load of passengers, when he was one hundred and fifteen feet from the crossing and he admits that he did not see it until within twenty feet of the crossing. The instruction is well enough.

V. It is further urged that Instruction No. 3 for plaintiffs is error. This instruction submits the excessive rate of speed, and reads:

"The court instructs the jury that if you find and believe from the evidence that defendant, Missouri & Kansas Interurban Railway Company, negligently operated the car, mentioned in evidence, at a high, dangerous and excessive rate of speed towards and across the intersection of its tracks with Forty-third Street, in Rosedale, Kansas, under the facts and circumstances as detailed in the evidence in this case, and that as a direct result of said negligence, if any, said car collided with the automobile mentioned in evidence at said intersection, and that deceased Alice Montague lost her life as a direct result of injuries received in said collision, then your verdict must be for plaintiffs if you find that all or any of the plaintiffs sustained pecuniary loss as the result of the death of said Alice Montague."

**Excessive Speed.**

What we have said as to the demurrer to the evidence, upon this question, suffices to answer this particular objection. Learned counsel do not question the form of the instruction, but urge that the evidence made no such case for the jury. The instruction is proper.

What we have said, supra, disposes of the further assignment that, "the entire record is insufficient to sup-

port a verdict in favor of plaintiffs.'' There is evidence upon which the jury could have found for the plaintiff, upon either of the two submitted theories of recovery, and the finding of the jury is final.

VI.   The fifth assignment is, that, ''under the evidence the court erred in submitting both assignments of negligence, because the one is contradictory to and destructive of the other.'' This contention,
**Destructive Assignments.** reduced to simple terms, is, that a plaintiff who charges both excessive speed as negligence, and facts showing a violation of the humanitarian rule of negligence, cannot prove and submit both acts of negligence. Such is not the law of this State or any other state, so far as we know. [Taylor v. Metropolitan Street Railway, 256 Mo. 1. c. 210, and the cases cited therein.] The case of Green v. Railway, 192 Mo. 1. c. 143, cited by appellant, does not touch the question, and the case of DeRousse v. West, 198 Mo. App. 1. c. 307-8, also cited by appellant, is an authority against appellant. Such case accords with the ruling in the Taylor case, supra.

VII.   The last question urged is that the verdict is excessive. Under the Kansas laws the damages are purely compensatory. We are, therefore, not dealing with a
**Excessive Verdict.** case where there is a fixed penalty, as we have ruled in this State. Under such law the damages suffered, when found by the jury, must be distributed according to the Kansas law of descents and distribution. Under such law the husband is entitled to one-half of the verdict, and the other half goes to other next of kin. In this case the only next of kin are the husband and the children. So, that the verdict must be distributed, one-half to the husband, and one-half to the other next of kin, the children.

Bearing in mind this situation, and other facts in the record, this verdict must be measured. First of all it must be noted that the Kansas court does not seem to

limit the compensatory provisions of their law to the minority of the children. We find no Kansas case exactly like the present, in that the question of the damages accruing to the husband and children for the death of a mother and wife, is discussed. The Kansas court has discussed the rights of a parent for the death of a child, and has said that compensatory damages are not to be limited to the minority of such child. [Railroad Co. v. Cross, 58 Kan. l. c. 428.] In that case it is said:

"While the plaintiffs would have no right to take the boy's earnings without his consent after he should reach his majority, it might well be that the ties of natural affection would be sufficiently strong to cause him to do them even more service after his majority than before. A recovery by parents for the death of a son after his majority is not at all uncommon. In the case of St. L. & S. F. Ry. Co. v. French, 56 Kan. 584, a judgment for forty-five hundred dollars in favor of a widowed mother, fifty-nine years of age, for the death of a son thirty-four years of age, was affirmed by this court."

The reasoning of this and other Kansas cases would indicate that the age of the children in this case would not be against them, provided the evidence showed that they suffered from the loss of the mother. The girl was a minor at the mother's death. She was entitled to the physical, moral and intellectual training of the mother. [St. Louis, I. M. & S. Ry. Co. v. Prince, 101 Ark. l. c. 325.]

In this case one of the sons was a part of the family, and gathered from the mother her help and moral influence. Like a good mother, she made a real home for the boy, although he was of age. She looked after the comforts of this boy and made for him a home. She patched his clothes, sewed on the buttons, and did all the things that a mother would do for a child. Under Kansas rulings, the fact that he was of age, does not change the situation. This question is left to the discretion of the jury. [Railway Co. v. Fajardo, 74 Kan. l. c. 323.] The wife was fifty-five years of age and hale and hearty. For

years she had been the real head of the family. The husband, who furnished the money for the home, was away eight months of the year. Upon the wife devolved the duty of looking after the home. This accident swept from him the work of this helpmate. She, in years, was young. She was fifty-five years of age, and whilst he was near ten years her senior, he had quite an expectancy from her. Under the Kansas cases, his damages must be measured by his expectancy. And under the Kansas cases, each case must depend upon the facts of the particular case. Viewing all the Kansas law, the amount of this verdict is not excessive. Going to other states, the same ruling must be made. [St. Louis, I. M. & S. Ry. Co. v. Prince, 101 Ark. 1. c. 325; M. K. & T. Ry. Co. v. Hurdle, 142 S. W. 992; Froeming v. Stockton Electric R. R. Co., 171 Cal. 1. c. 414; Craig v. St. P., M. & O. R. Co., 97 Neb. 1. c. 592.]

Under Kansas law the damages are left largely to the discretion of the jury. This does not mean that we would not order a *remittitur,* if the facts justified. But in this case the facts do not justify. The evidence in this case shows that the mother was the mainstay of the family. The husband furnished the money, but she, for eight months in the year, was monarch of all that she surveyed. She looked after, not only the minor members of the family, but all of the family. Her services and influence were of value to all. For awhile the husband tried to fill her place with a housekeeper. The cost of this appears in the record. Using it as a basis, the husband would be entitled to all that the judgment gave him. In all the judgment *nisi* should be affirmed. All concur.