WILLIAM JOHNSON, An Infant, by HALL TAYLOR, His Next Friend, v. WABASH RAILROAD COMPANY, Appellant.

**Division One, June 30, 1914.**

1. **JUDICIAL POWER: Preliminary Matter: Appointment of Next Friend by Clerk: Constitutional Statute.** The "judicial power" referred to in Sec. 1 of Art. 6 of the Constitution has reference to the actual and real trial and determination of

"matters of law and equity," and not to the mere preliminary steps necessary to be taken for the institution of a suit at law or in equity, such as the appointment in vacation of a next friend by the clerk of the court for a minor whose mother has been killed by a railroad train. The appointment in vacation by the clerk of a next friend for the minor plaintiff is preliminary to a suit about to be instituted, and the statute (Sec. 1740, R. S. 1909) authorizing that to be done is not unconstitutional.

2. **NEGLIGENCE: Ordinance Speed of Train: Applies to Every Part of Track.** Where the ordinance forbids trains to run in excess of eight miles per hour on unfenced railroad tracks within the city, it applies to every part of the unfenced track within the city, and a greater rate of speed than eight miles per hour at the first cross street after the train enters the unfenced part of the track is a violation of the law. The railroad company has no right to run its trains at a rate of twenty or twenty-five miles per hour up to the point where the track is fenced, and thereafter, in slowing down, run a part of the distance in excess of eight miles.

3. **CONTRIBUTORY NEGLIGENCE: Walking on Track: Train not Seen by Others: Presumption of Due Care.** The Chicago & Alton and defendant's east-and-west tracks were about thirty feet apart and parallel. Deceased and others about twelve o'clock of a dark night were walking east on the Chicago & Alton track within the city, where the tracks were unfenced, and deceased was struck by defendant's train where a street crossed its track. The ordinance forbade the running of a train at a greater speed than eight miles per hour, and the evidence sustains both grounds of negligence relied on, namely, failure to give crossing signals and excessive speed, the train being run from twenty to twenty-five miles per hour. The head-light was an oil lamp, and if burning was not seen by those who accompanied deceased, nor did they see or hear the train until it passed them and they saw the lights in the caboose. *Held*, that, as others did not see or hear the train, it cannot be held, as a matter of law, that deceased was guilty of contributory negligence. Being dead and there being no evidence of what her condition was, she is entitled to the presumption of having used due care.

4. **EVIDENCE: Conclusion of Witness: From Facts Seen.** If a witness was in close proximity to the track and puts himself in a position to have heard and seen, his testimony that no bell was rung or whistle sounded is not a conclusion, but a statement of a fact.

5. **NEGLIGENCE: Speed of Train: Violation of City Ordinance: Proximate Cause of Injury.** Where there is positive evidence that defendant ran its train in excess of the maximum ordi-

nance rate, and there is evidence from which it may be reasonably inferred that if the train had been run at that rate the injury to deceased would not have occurred, it is not error to instruct the jury that, if they believe that as a direct consequence of the violation of the ordinance deceased was struck by the train, their verdict may be for plaintiff, unless she was guilty of contributory negligence.

6. FAILURE TO WITHDRAW ABANDONED ISSUE. No harm results to defendant because of a failure to give an instruction asked by it withdrawing an issue pleaded and abandoned by plaintiff—in this case, the failure of defendant's servants in charge of the train which struck deceased to keep a lookout for persons on the street crossing where she was struck.

Appeal from Audrain Circuit Court.—*Hon. James D. Barnett,* Judge.

AFFIRMED.

*J. L. Minnis* and *Robertson & Robertson* for appellant.

(1) Section 1740, R. S. 1909, is unconstitutional because in conflict with section 1, article 6, Missouri Constitution, and the appointment of Hall Taylor as next friend by the clerk in vacation was void. Therefore the action cannot be maintained on account of no legal capacity to sue. A next friend is an officer of the court. Sinclair v. Sinclair, 13 M. & W. 640; Bartlett v. Batts, 14 Ga. 539; Trahern v. Colburn, 63 Md. 99; Leopold v. Meyer, 10 Abb. Prac. 40; Tucker v. Dobbs, 59 Tenn. (12 Heisk.) 18; Crotty v. Eagle's Admr., 35 W. Va. 151; Vaile v. Sprague, 179 Mo. 398. The appointment of an officer or assistant of the court is a judicial act. State v. Westfall, 89 Am. St. 580; In re Janitor, 35 Wis. 410; State v. Noble, 10 Am. St. 149. The clerk is a ministerial officer. State v. Bowen, 41 Mo. 217; Mealing v. Pace, 14 Ga. 596. The judicial power cannot be delegated. 3 Kent's Comm. (12 Ed.), 547. The hearing and determination of the fitness of an applicant and the appointment of him as a

next friend is the exercise of judicial power. In re Bookout, 21 Barb. 348. (2) The court erred in refusing to instruct a verdict for the defendant at the close of the evidence for the plaintiff and also at the close of all the evidence. The evidence showed that the train could be seen by the moonlight. Moore on Facts, sec. 1188; Williamson v. Railroad, 139 Mo. App. 489. There was no evidence that there was anything to obstruct decedent's view of the approaching train. Mockowick v. Railroad, 196 Mo. 571; Burge v. Railroad, 244 Mo. 94; Higgins v. Railroad, 197 Mo. 318; Morton v. Heidorn, 135 Mo. 617; Sexton v. Railroad, 245 Mo. 275; Chemical Co. v. Lackawanna Line, 78 Mo. App. 315; Bigelow v. Railroad, 48 Mo. App. 367; United States v. Ross, 92 U. S. 284. There was no evidence that the headlight was not burning. Moore on Facts, sec. 1118; Williamson v. Railroad, 139 Mo. App. 489. The court will take judicial notice of the fact that a freight train running up grade at the rate of twenty to twenty-five miles an hour makes a great deal of noise. Malott v. Hawkins, 159 Ind. 127; Mann v. Railroad, 128 Ind. 138; Railroad v. Gunderson, 174 Ill. 495; Davis v. Railroad, 47 N. Y. 403; Moshier v. Railroad, 8 Barb. (N. Y.) 431; Hentz v. Railroad, 13 Barb. (N. Y.) 658. If the plaintiff had stopped to listen just before going into danger she would have heard the train, which was then not over 100 feet away. Railroad v. Coffman, 30 Ind. App. 462; Payne v. Railroad, 136 Mo. 562; Knox v. Railroad, 202 Pa. St. 504; Coleman v. Railroad, 98 N. Y. App. Div. 352, 90 N. C. Supp. 267; Waddell v. Railroad, 98 App. Div. 343, 347, 90 N. Y. Supp. 239, 241; Mann v. Railroad, 128 Ind. 138; Breeze v. Manfg. Co., 140 Mich. 372; Railroad v. West, 34 Ind. App. 95. There was no evidence that the statutory crossing signals were not sounded as the train approached the crossing. Moore on Facts, secs. 1188, 1190 and 1203; McGrath v. Tran-

sit Co., 197 Mo. 105; Sullivan v. Railroad, 72 Mo. 195; Williamson v. Railroad, 139 Mo. App. 489; Cathcart v. Railroad, 19 Mo. App. 118; McCreery v. United Railways, 221 Mo. 26. The decedent had no right to presume that the train was running at any particular speed: 1st, because the ordinance did not apply until the train reached the east line of Walnut street, a few feet from the decedent; 2nd, because she could have known of the rate of speed by the exercise of ordinary care. Schmidt v. Railroad, 191 Mo. 215; Stotler v. Railroad, 204 Mo. 641; Green v. Railroad, 192 Mo. 131. Therefore decedent was guilty of contributory negligence in going on the track when she saw or by the exercise of ordinary care could have seen the approach of the train in time to have prevented being struck. Sanguinette v. Railroad, 196 Mo. 466; Hayden v. Railroad, 124 Mo. 566; Huggart v. Railroad, 134 Mo. 673; Schmidt v. Railroad, 191 Mo. 215; Laun v. Railroad, 216 Mo. 563; McCreery v. Railroad, 221 Mo. 18; Burge v. Railroad, 244 Mo. 76; Green v. Railroad, 192 Mo. 139; Stotler v. Railroad, 204 Mo. 619; Porter v. Railroad, 199 Mo. 82; Fletcher v. Railroad, 64 Mo. 484; Zimmerman v. Railroad, 71 Mo. 476; Baker v. Railroad, 122 Mo. 533; Stepp v. Railroad, 85 Mo. 229; Donohue v. Railroad, 91 Mo. 357; Butts v. Railroad, 98 Mo. 272; Dyrcz v. Railroad, 238 Mo. 33. The excessive speed was not the proximate cause of the striking of decedent. The ordinance limiting the rate of speed applied only to unfenced track, and in this case the track was fenced to within five feet of the plaintiff. The difference in time if the train had been obeying the ordinance would have been only two-sevenths of one second. Excessive speed is not the proximate cause when the injury would have occurred if the train had been obeying the ordinance. King v. Railroad, 211 Mo. 1.

*E. S. Gantt* for respondent.

(1) The appointment of a next friend for an infant may be judicial in character; but is only preliminary or collateral to the matter in suit and does not conflict with the provisions of our Constitution which vests the judiciary power of the State in certain courts exclusively. Such powers are necessary to the administration of justice in courts that have terms and vacations, and have always been exercised by judges or clerks. State ex rel. v. Andrae, 216 Mo. 617; State ex rel. v. Woodson, 161 Mo. 444; State ex rel. v. Loan Ass'n, 159 Mo. 102; St. Joseph v. Truckenmiller, 183 Mo. 9. The appointment of a next friend is a ministerial act, even though the clerk may have some discretion in connection with the matter. State ex rel. v. Roach, 230 Mo. 410; 5 Words and Phrases, p. 4523. The appointment of a next friend is not a judgment. It is an order. 4 Words and Phrases, p. 3838. A statute will not be declared unconstitutional unless its invalidity appears beyond a reasonable doubt. State v. Webber, 214 Mo. 272; State ex rel. v. Railroad, 215 Mo. 479; State ex rel. v. Gordon, 231 Mo. 547. The delegation of powers to clerks is common, and in most cases the duties so delegated are ministerial. 8 Cyc. 860. (2) It was not error for the court to give plaintiff's instruction number 3. If the engine was being run upon unfenced tracks in excess of eight miles an hour at the time it struck decedent, the defendant was liable if deceased was killed as a direct result of said act. The court placed a greater burden on plaintiff in requiring the jury to also find that the engine was being run upon unfenced tracks before and at the time it struck decedent. Therefore defendant has no cause to complain. A similar instruction was not criticised in the case of Kolb v. Transit Co., 102 Mo. App. 152. An erroneous charge which could only have op-

erated to the disadvantage of the successful party in
the lower court is not ground for reversal.  Cook v.
Printing Co., 227 Mo. 471; Orcutt v. Bldg. Co., 214 Mo.
52; Howard v. Railroad, 110 Mo. App. 574.  (3) If
there can be two views of plaintiff's conduct enter-
tained by fair-minded men, the one condemning, the
other exonerating her, she is entitled to the verdict of
a jury on the question of her contributory negligence.
Mockowik v. Railroad, 196 Mo. 567; Deschner v. Rail-
road, 200 Mo. 326.  (4) By its plea of contributory
negligence, defendant confessed the negligence
charged.  Allen v. Transit Co., 183 Mo. 411; Ramp v.
Railroad, 133 Mo. App. 703.  A general denial raises
no issue when followed by a plea of confession and
avoidance, and is waived by such subsequent plea.
State v. Jockey Club, 200 Mo. 65.  Though a general
denial and a plea of contributory negligence are incon-
sistent and could have been stricken out, as they were
allowed to stand, the denial is waived by the latter
plea.  Price v. Mining Co., 83 Mo. App. 474.  And the
allegations of plaintiff's petition in these circumstances
are confessed under the pleadings.  State v. Jockey
Club, 200 Mo. 65; Bowen v. Kansas City, 140 Mo. App.
698.  (5) Every one is presumed to be in the exercise
of due care for his or her own safety until the con-
trary is shown.  Goff v. Transit Co., 199 Mo. 706; Stot-
ler v. Railroad, 200 Mo. 146; Weller v. Railroad, 164
Mo. 198; Meadows v. Sus. Co., 129 Mo. 93; Davis v.
Railroad, 46 Mo. App. 189; Reska v. Railroad, 180 Mo.
187; Railroad v. Gentry, 163 U. S. 366; Buesching v.
Gas Light Co., 73 Mo. 219; Petty v. Railroad, 88 Mo.
306; Crumpley v. Railroad, 111 Mo. 152; Schlereth v.
Railroad, 115 Mo. 87; Bludon v. Railroad, 108 Mo. 439.
(6) Where the evidence showed an injury at a pub-
lic crossing by a train colliding with a person walking
across the track, when the bell was not rung or the
whistle sounded, a prima-facie case was made, and the
burden of proving non-liability was then shifted to the

defendant. Weigman v. Railroad, 223 Mo. 699. (7)
The law presumes, in the absence of proof to the contrary, that one crossing a railroad track within an incorporated town, acted upon the assumption that an approaching train was not being run in the excess of the rate permitted by ordinance; and in such case the court has no right to assume, as a matter of law, that his conduct is not such as might be reasonably expected of a reasonably prudent person. Riska v. Railroad, 180 Mo. 168; Hutchinson v. Railroad, 161 Mo. 246; Weller v. Railroad, 164 Mo. 180; Goff v. Transit Co., 199 Mo. 694; Eckhard v. Transit Co., 190 Mo. 593; Stotler v. Railroad, 204 Mo. 640; Mockowik v. Railroad, 196 Mo. 571; Hutchinson v. Railroad, 195 Mo. 548. The facts of the following crossing cases are similar to the facts of this case: Railroad v. O'Neill, 186 Fed. 13; Railroad v. Sharp, 63 Fed. 532; Railroad v. Spike, 121 Fed. 44.

GRAVES, J.—Plaintiff, an infant, sues by his next friend for the death of his mother, such death alleged to be due to the negligence of the defendant. The negligence is thus charged in the petition:

"That the city of Mexico, Missouri, is and was at all times herein mentioned a municipal corporation of the third class, organized under the laws of the State of Missouri. That long prior to the happening of the wrong complained of herein, the said city had duly passed, published and put in force and effect, an ordinance by which ordinance it is made and declared to be unlawful for any railroad company or its agents, servants or employees to run upon its tracks or switches within that part of the corporate limits of said city where said railroad track, tracks or switches is unfenced, any locomotive, car or train of cars at a rate of speed to exceed eight miles per hour; which ordinance was duly passed and published in book form and promulgated by the city of Mexico, Mis-

souri. That said ordinance was in full force and effect at the time of the wrongs herein complained of and a penalty was imposed for its violation.

"Plaintiff further states that at and near said crossing, the tracks of the defendant are unfenced and that said crossing is in the corporate limits of the city of Mexico, Missouri, and in the heart of said city, and that said city is a large and populous city, and that, as defendant well knew, the said crossing is always and at all times used by a great number of travelers, both on foot and in vehicles; that it is and was the duty of the defendant to have its locomotives and cars under full control and to move the same very slowly and to keep a lookout for travelers when approaching said crossing, but plaintiff says that the defendant, its agents and servants, in violation of their duty and in violation of the ordinance heretofore pleaded, carelessly and negligently ran a locomotive and train of cars up to and over said crossing at a very high rate of speed, to-wit, twenty-five to forty miles per hour, and carelessly and negligently failed to run said train at a slow or lawful rate of speed or to have or to keep the same under control, and negligently and carelessly failed to keep a lookout for persons on said crossing.

"Plaintiff further says that the defendant did not within eighty rods or within any other distance of said crossing, ring the bell or blow the whistle on said engine and train of cars and keep the same ringing and blowing until said engine had passed said crossing, but negligently and carelessly and unlawfully failed and refused to give any signals at all of the approach of said train at said crossing and negligently ran said train against Emma Taylor. Plaintiff further says that as a result of the negligence of the defendant as set forth above, the collision aforesaid was caused and produced and his said mother was struck and killed by said train, and by her death he was and is damaged

in the sum of ten thousand dollars, for which sum and costs he prays judgment.''

The answer is: (1) a general denial; (2) a specific denial that there was a legal appointment of the next friend, coupled with an averment that section 1740, Revised Statutes 1909, is violative of constitutional restrictions, in so far as it authorizes the appointment of a next friend by the circuit clerk; and (3) a plea of contributory negligence upon the part of the deceased. No reply is found in the abstract of record, but the case proceeded below as if one had been filed. From a verdict of $3000 for the plaintiff and the judgment entered thereon the defendant has appealed. Further details will be stated in connection with the points urged.

I. We are met with a preliminary question in this case. Such question

**Judicial Power: Appointment of Next Friend By Clerk.** is thus stated in the brief:

''Section 1740, Revised Statutes 1909, is unconstitutional because in conflict with section 1, article 6, Missouri Constitution, and the appointment of Hall Taylor as next friend by the clerk in vacation was void. Therefore the action cannot be maintained on account of no legal capacity to sue.''

In the instant case the appointment was made by the clerk of the court. The constitutional provision alleged to be violated by this section of the statute reads:

''The judicial power of the State, as to matters of law and equity, except as in this Constitution otherwise provided, shall be vested in a Supreme Court, the St. Louis Court of Appeals, circuit courts, criminal courts, probate courts, county courts and municipal corporation courts.''

This statute has been upon the books for some years, but up to this time does not seem to have been

questioned. In our judgment the newness of the idea is the only thing there is in the point made. The appointment of a next friend for an infant is only a preliminary matter in the course of a judicial proceeding, but not necessarily judicial in character. This idea is fully recognized by VALLIANT, J., in State ex rel. v. Woodson, 161 Mo. l. c. 455, whereat he said:

"What is here said is in reference to judicial power in its strict sense. There are quasi-judicial powers conferred upon quasi-judicial bodies, and powers to do certain acts in vacation, judicial in character, but subsidiary to a suit pending or about to be instituted in court, are conferred on judges of courts; but the power to try issues in a suit at law or in equity, and pronounce judgment or decree upon the facts found or confessed, can be conferred, under our Constitution, only on a fully organized court."

In other words, the judicial power referred to in the constitutional provision, supra, has reference to the actual and real trial and determination of "matters of law and equity" and not to mere preliminary steps necessary to be taken for the institution of the suit in law or equity. In our judgment the statute does not violate the Constitution, and this point is ruled against the defendant.

II. It will be observed that the petition counts upon at least two negligent acts: (1) running the train in excess of the rate of speed fixed by ordinance, and (2) failure to give crossing signals. Suffice it to say that the evidence for the plaintiff tended to prove a speed rate of twenty to twenty-five miles per hour, whilst the ordinance rate was eight miles per hour, and it further tends to prove a failure to sound the whistle or ring the bell prior to crossing the street named. So far as the facts were concerned both questions were properly questions for the jury.

*Speed Ordinance: Applies to All Parts of Track.*

Defendant's contentions may be summarized shortly. The ordinance made it unlawful to run a train in excess of eight miles an hour in the city of Mexico on tracks which were unfenced. To get at the contention made, a short *resume* of pertinent facts is proper. Walnut street runs north and south in the eastern portion of the city of Mexico. The Wabash railroad runs east and west through said city, and parallel with it runs the Chicago & Alton railroad. At and near Walnut street these two parallel lines were about thirty feet apart. The corporate limit of that city on the east was about one-half mile to the east of Walnut street, but it would seem that up to the east line of said street the track was fenced. The west corporate line was one and one-half miles west of Walnut street, but from the east side of Walnut street on to the western city limits the tracks were unfenced. In the argument of the case, point was made that there had been no violation of the ordinance, because the defendant had the right to run in excess of eight miles per hour up to within a few feet of where the deceased was struck. This point is not well taken. Through the city was an unfenced stretch of track one and one-half miles long. The eastern end of this unfenced stretch of track coincided with the eastern side of Walnut street. This ordinance required the defendant to run from the eastern side of Walnut street to the western limits of the city at a rate of speed not to exceed eight miles per hour, and vice versa. The train doing the injury in this case came from the east and was going west. Under this ordinance it was the duty of the defendant to so approach the Walnut street crossing from the east as to have its train running within the ordinance rate when the unfenced portion of the track was reached. It could not run at twenty-five miles per hour up to the east side of Walnut street, and then begin to reduce its speed to bring it within

259 Mo.—35

the ordinance rate. When the law fixes boundary lines within which acts must conform to ordinance regulations, all territory within the fixed boundaries falls under the ban of the law. The law reaches from side to side and from center to circumference, and such territory must be so approached by the citizen, that compliance with the law can be accomplished at the very doorway of the regulated territory. The admissions of the train crew as to the speed of this train show a violation of the ordinance, which makes a prima-facie case of negligence. In the brief counsel for defendant says:

"The deceased had no right to presume that the train was running at any particular speed, because the ordinance did not apply until the train reached the east line of Walnut street, a few feet from the decedent."

As above indicated the above is a misconception of the law. The deceased had a right to presume that the train would approach Walnut street at such a rate of speed, that when it (in the ordinary and usual course of handling trains) reached the east line of Walnut street it would be running at a rate not in excess of the ordinance rate.

III. It is next urged that the deceased was guilty of such contributory negligence as would bar a recovery by the plaintiff. This calls for more facts. Deceased, with others, at about twelve o'clock at night was coming up the Chicago & Alton tracks from the west. Some of the parties were with her and some behind her. According to the plaintiff's evidence the night was dark. The headlight on the engine was not burning —at least was not seen by those who followed plaintiff up the Chicago & Alton tracks. To the east were some brick kilns which were in operation that night, and the evidence tends to show that the lands east

*Contributory Negligence.*

of Walnut street are low lands, and when there are cloudy nights the smoke settles to the ground and renders it difficult to see an ordinary oil headlight on an engine. This engine was equipped with an oil lamp. The length of the train is not given; the evidence is in fragments, showing an engine and caboose. The evidence shows that others not far behind plaintiff did not see or hear this train, until it passed them and they saw the lights in the caboose. If conditions were such that others did not or could not see or hear this train, it can hardly be said that deceased was guilty of contributory negligence as a matter of law. Being dead, and there being no evidence of what her condition was at the point and time of injury, she is entitled to the presumption of having used due care. The evidence is not such as to so destroy this presumption and authorize the court to say that she was negligent as a matter of law. The demurrer to the testimony was properly overruled.

IV. It is next urged that the court erred in permitting the witness Spurs to testify that no bell was rung or whistle sounded by the approach-

Evidence:
Conclusion.

ing train. This witness was walking up the railroad track of the Chicago & Alton. He says he was looking toward the Wabash tracks. The objection goes to two questions, but the context of his whole statement should be considered. His testimony in full upon this question is as follows:

"Q. Where were you coming from and where were you going at that time? A. I was coming down from the restaurant; I was going home.

"Q. You were coming from town and going towards home? A. Yes, sir.

"Q. Which way were you looking, down towards the Wabash? A. Yes, sir.

"Q. Direct east? A. Yes, sir.

"Q. As you were walking down there? A. Yes, sir.

"Q. State to the jury if you saw or heard any train? A. Well, when I was going down the railroad tracks I didn't hear no train and I didn't see any until the caboose came by me, and I could tell by the lights of the caboose and knew there was a train.

"Q. Where were you walking? A. I was walking on the C. & A. tracks.

"Q. Were you walking on the C. & A. tracks east? A. Yes, sir; I was down between the switch track and the main line.

"Q. Is there a path in there? A. Yes, sir.

"Q. The Chicago & Alton and the Wabash run along together there east of Mexico for a distance? A. Yes, sir.

"Q. For quite a distance? A. Yes, sir.

"Q. About how far is the C. & A. tracks from the Wabash tracks? A. Fifteen or twenty feet, maybe further.

"Q. That is, the main line of the C. & A. and Wabash is further than the switch, isn't it? A. Yes, sir; further than the switch.

"Q. Now, tell the jury if any bell was rung on the engine? A. No, sir.

"Q. State to the jury if any whistle was blown or bell rung as that train came up to and over that crossing. A. No, sir, there wasn't."

The objections were lodged to the last two questions and the answers thereto. In view of what the witness says about his actions there at the time, these questions were proper. He puts himself in a position to hear, and says that he was looking. If I say that I was near, and watched a train pass, I certainly can say, as a fact (not as a mere conclusion, as is suggested in the objections) that no bell was rung or whistle sounded. This witness says

that he did see the caboose as it passed him, and could certainly say that no bell was being rung or whistle sounded at or about that time. His testimony does not go further, when it is all considered. The objection is without substance and is therefore ruled against the defendant.

Instruction numbered 6, as modified by the court, is criticized, but there is no substance in the objections thereto.

**V.** Defendant urges that the court erred in giving plaintiff's instruction numbered 3. This instruction reads:

"The court instructs the jury that under the ordinance of the city of Mexico, it is made unlawful for any railroad company, or its agents, servants or employees to run upon the tracks or switches of any railroad company within that part of the corporate limits of said city where said railroad track or tracks are unfenced, any locomotive cars, or train of cars, at a rate of speed exceeding eight miles per hour; and if you believe from the evidence that the locomotive engine which struck deceased was at the time and before it struck her, being run by the defendant upon unfenced tracks of defendant railroad company within the corporate limits of Mexico at a rate of speed in excess of eight miles an hour, then you are instructed that such running in excess of eight miles an hour is negligence; and if you believe as a direct consequence of such negligence the decedent was killed, you will render a verdict for plaintiff, unless you believe from the evidence decedent was guilty of negligence which contributed to her death, and you are instructed that contributory negligence on the part of decedent must be established by the greater weight of the evidence in the case and unless it is so established you cannot find for the defendant upon that ground.

*(margin note: Instruction: Proximate Cause of Injury: Speed of Train.)*

"Provided you further believe from the evidence that plaintiff was a minor child of decedent, born out of wedlock, and that at the time of her death decedent was unmarried, and that no husband survived her, and that no other child than plaintiff born to her survived her and was living when she died."

It is urged that the violation of the ordinance was not the proximate cause of the injury, and we are cited to King v. Railroad, 211 Mo. 1. Having written the King case we are familiar with its facts—and what was there said had reference to the facts in judgment, which were wholly different from the facts here. Had the train involved here so reduced its speed that it would have been running at eight miles per hour when it reached the east line of Walnut street, this accident might never have occurred. It was at least a question for the jury to say whether or not the violation of the ordinance occasioned the injury to deceased under the facts of this record, and the instruction is well worded to that end. This contention of defendant is without merit and is therefore ruled against it.

VI. It is further urged that the court erred in refusing defendant instructions 4 and 10. Instruction 4 was a peremptory instruction withdrawing from the jury the question of speed of the train. From what we have said in a previous paragraph there was no error in refusing this instruction. It was a question for the jury to say whether or not the rate of speed was a proximate cause of the injury.

Instruction 10 reads: "The court instructs the jury that there is no evidence in this case that the decedent, Emma Taylor, was struck by defendant's train as the result of the failure of the agents and servants in charge thereof to keep a lookout for persons on said Walnut street crossing, and that issue is

withdrawn from the jury and will not be considered by you in arriving at a verdict.''

This theory of the case was not urged by the plaintiff, and the plaintiff did not by his instructions predicate a right to recover upon such theory. The plaintiff having abandoned that issue, no harm resulted to defendant by the refusal of this instruction. Upon the whole this case was well tried *nisi* and we see no reason for disturbing the judgment.

Let the judgment be affirmed. All concur.