Robert L. JENKINS, Respondent,

v.

WABASH RAILROAD COMPANY, a Corporation, and Herman J. Klein, Administrator of the Estate of Ruby Klein, Deceased, Appellants.

William B. HUTCHERSON, Respondent,

v.

WABASH RAILROAD COMPANY, a Corporation, and Herman J. Klein, Administrator of the Estate of Ruby Klein, Deceased, Appellants.

Nos. 46233, 46232.

Supreme Court of Missouri,

Division No. 2.

March 9, 1959.

Motion for Rehearing or to Transfer to Court En Banc Denied April 13, 1959.

Ely & Voorhees, Alphonso H. Voorhees, St. Louis, for Wabash R. Co. (Defendant) Appellant, John L. Davidson, Jr., St. Louis, of counsel.

Doris J. Banta, Byron A. Roche, St. Louis, for appellant, Herman J. Klein, Carter, Bull & Baer, St. Louis, of counsel.

N. Murry Edwards, Ninian M. Edwards, St. Louis, for respondent, Robert L. Jenkins.

Hale W. Brown, Kirkwood, for respondent William B. Hutcherson.

STOCKARD, Commissioner.

Robert L. Jenkins and William B. Hutcherson each brought suit against Wabash Railroad Company and Herman J. Klein, administrator of the estate of Ruby Klein, for the wrongful death of their respective wives. The cases were consolidated for trial, and the defendants have appealed from judgments entered in favor of Robert L. Jenkins in the amount of $25,000 and in favor of William B. Hutcherson in the amount of $20,000.

On Saturday, December 17, 1955, at about 1 o'clock in the afternoon Mrs. Ruby Klein, her daughter Mrs. Allene Jenkins, and her sister Mrs. Goldie Hutcherson, left the Hutcherson residence in St. Charles County to drive to Wentzville, Missouri. Mrs. Klein drove over what is referred to as the Josephville road to where it crossed the tracks of the Wabash Railroad about 900 feet west of the Gilmore station. They intended to cross the tracks and go to Old Highway 40, just south of the tracks, and then to Wentzville. However, as they crossed the railroad tracks the automobile was struck by the diesel engine of a Wabash passenger train, and all three occupants were instantly killed.

Each case was submitted to the jury on the negligence of Mrs. Klein in that she failed "to keep a watch to the right or west as she drove her said automobile onto the railroad track," and on the negligence of Wabash in that the train was operated at excessive speed over a dangerous crossing.

Wabash first contends that the trial court erred in overruling its motion for a directed verdict and for judgment notwithstanding the verdict because the evidence does not show that the speed of the train was excessive or that it was the proximate cause of the collision. These contentions necessitate a more detailed statement of the evidence, and in determining whether plaintiffs made submissible cases for the jury, we must consider all of the evidence in a light most favorable to plaintiffs' contentions. Dunn v. Terminal Railroad Association of St. Louis, Mo.Sup., 285 S.W.2d 701. "The cause may not be withdrawn from the jury unless the facts in evidence and the legitimate reasonable inferences which may be drawn therefrom are so strongly against plaintiff as to leave no room for reasonable minds to differ." Holmes v. McNeil, 356 Mo. 763, 203 S.W.2d 665, 668.

The Josephville road approaches the Wabash tracks from the north. When it reaches the area of the tracks it turns westward and runs parallel with the tracks for a little more than 300 feet. It then turns

to the left or southward and crosses the tracks. The level of the Josephville road, as it runs parallel with the tracks, is substantially lower than the level of the tracks in varying distances up to 12.9 feet. As the road approaches to within approximately 200 feet of the crossing it rises, at first gradually but more steeply as the crossing is neared, until it is almost level with the tracks. At the turn toward the tracks the road is banked with the outside part of the curve or western part of the road being two and one-half feet higher than the inside of the curve. An automobile must be within eight to twelve feet of the north rail before it is substantially level with the tracks, and at this location it would be headed south and would be approaching the tracks at approximately a right angle. The view to the west is then unobstructed for almost one-half mile except for the limited obstruction by a post nine feet tall located about sixteen feet north of the tracks and a few feet west of the road and having the usual crossed boards at the top denoting a railroad crossing. Because of the rise in elevation of the Josephville road and the bank of the road in the curve, the front bumper of an automobile would have to be approximately eighteen and one-half feet from the north rail of the track before the driver could see down the tracks to the west. The crossing itself is narrower than the road and not wide enough for cars to pass safely on it. Mrs. Hutcherson lived about two and one-quarter miles from the crossing and was familiar with it. Mrs. Klein and Mrs. Jenkins both lived in St. Louis but had been over the crossing on several occasions. There were no automatic signals at the crossing.

The Wabash train was a passenger train consisting of a diesel engine and seven cars. As it approached the crossing it was traveling eastward between 75 and 78 miles an hour. The track immediately to the west of the crossing where the collision occurred was perfectly straight, but about 300 feet west of the crossing it began

to curve to the southwest. The fireman, who was seated on the left side of the engine, was the only eyewitness of the collision who testified. His testimony was indefinite whether the Klein automobile was standing still or approaching the crossing when he first saw it. But in either event, according to the fireman, the automobile was stopped or came to a stop before it reached the crossing, and at that time it was "sitting in the clear;" he could see the full length of it and to the best of his recollection it was approximately level; and it then pulled out in front of the train when the train was "right on top of it." He could see the passenger in the front seat of the car, but could not see the driver or the passenger in the rear seat. After the automobile moved onto the track it stopped with its rear wheels about at the "center of the track." The fireman could not remember if the train slowed any before the impact, but it had gone into an "emergency stop." The whistle of the train was blown at the whistle post and it was continually blown as the train approached the crossing. The bell was ringing at the time of the impact.

In addition to the above physical aspects of the crossing plaintiffs offered evidence to show the use of the crossing by the public. While there is no evidence that the crossing was located in a town, it is in or very near to a community known as Gilmore which is located north of the crossing. In one of the photographs introduced in evidence there can be seen eleven buildings, most of them houses, located in the neighborhood of the crossing. The school bus is driven over the crossing on the average of six times each day. Eight roads north of the crossing connect with Josephville road, and the people living in the small communities of Josephville, Gilmore and St. Paul frequently use the crossing to go to and from Wentzville or St. Charles, the only nearby large communities. There are between 100 and 125 families in St. Paul and over 80 families in Josephville. Two or three automobiles use the crossing

every ten minutes, and when traffic is stopped for about ten minutes for a freight train as many as five automobiles would be stopped on each side waiting to cross. Most of the neighboring residents are farmers, but some of them have members of their families who commute each day to places of employment and use the crossing.

It has been stated that "in the country, between stations away from congested populations, it is not negligence for passenger trains to run at a rapid speed over road crossings." Burge v. Wabash R. Co., 244 Mo. 76, 148 S.W. 925, 932; McGee v. Wabash R. Co., 214 Mo. 530, 114 S.W. 33; Graves v. Atchison, T. & S. F. Ry. Co., 360 Mo. 167, 227 S.W.2d 660, 665. But, whether negligent speed exists depends upon all the surrounding circumstances, Montague v. Missouri & K. I. Ry. Co., 305 Mo. 269, 264 S.W. 813, 816; Toeneboehn v. St. Louis-San Francisco Ry. Co., 317 Mo. 1096, 298 S.W. 795, 801, and it has been stated that "although warning signals are given, where a railroad crossing is dangerous, the [railroad] company also 'owes the additional duty to such travelers to pass such crossing at a reasonable rate of speed, proportioned to the danger.'" Pentecost v. St. Louis Merchants' Bridge Terminal R. R. Co., 334 Mo. 572, 66 S.W. 2d 533, 536; Herrell v. St. Louis-San Francisco Ry. Co., 322 Mo. 551, 18 S.W.2d 481; Graves v. Atchison, T. & S. F. Ry. Co., supra. Therefore, it is material in this case to determine whether the evidence is sufficient to authorize a finding by the jury that the crossing where this accident occurred was "dangerous" within the meaning ascribed to that term in relation to the operation of trains thereover at a negligent speed, and if so, whether the speed at which the train was operated was, under all the circumstances, excessive so as to constitute actionable negligence.

Although the crossing in this case was not in a thickly populated area, it was not the seldom-used crossing in a country area referred to in such cases as Burge v.

Wabash R. Co., supra, and Graves v. Atchison, T. & S. F. Ry. Co., supra. Also, the public road does not approach the crossing from the north at right angles to the railroad track with an unobstructed view as in the Graves case. The evidence indicates that the crossing is located in a substantially populated rural area, as distinguished from an urban area or country area, and that it is extensively used by the traveling public. Also, the view of the tracks to a person approaching from the north is totally obstructed until he is very near to the tracks. Under these circumstances it was a jury question whether the crossing was dangerous, as this term is used in determining whether the railroad owes a duty to travelers on the public highway to pass over such crossing at a reasonable rate of speed, and whether under the circumstances it was negligence on the part of Wabash to operate the train over the crossing at the speed shown in the evidence, and if so whether that negligence was the proximate cause of the deaths of Allene Jenkins and Goldie Hutcherson.

■ Wabash next contends that the trial court erred in giving instruction 1 at the request of plaintiff Jenkins and instruction 6 at the request of plaintiff Hutcherson. In the first paragraph of instruction 1 it was stated that Wabash admits that it is a railroad corporation owning, operating and controlling engines, passenger and freight trains, cars, crossings and rights of way, and that it operated a railroad in the transportation of merchandise and passengers as a common carrier for hire; that Wabash admits the ownership, operation and control of the railroad tracks mentioned in the evidence and that its right of way and railroad track crossed the public road and highway mentioned in evidence; and that it also admits that Allene Jenkins was injured and killed on December 17, 1955, as a direct result of the collision mentioned in the evidence. In a separate paragraph it was then stated that Herman J. Klein, administrator of the estate of Ruby Klein, ad-

mits that he is the administrator of the estate of Ruby Klein and that he also admits that on December 17, 1955, Allene Jenkins was riding as a passenger in an automobile operated by Ruby Klein, and that Ruby Klein was involved in a collision with the train of Wabash and that Allene Jenkins died as a result of the injuries sustained in such collision. Instruction 6 was substantially the same except that in the last paragraph reference was made to the admissions of Herman Klein, as administrator, to the effect that the wife of William B. Hutcherson was a passenger in the car operated by Ruby Klein and that she died of the injuries received in the collision.

 Wabash first attacks these instructions generally by asserting that they served no useful purpose and because they constitute statements of fact and are not cautionary and do not require any findings of fact. It is respondents' contentions that the matters stated in the instructions were admitted in the pleadings, and for that reason no evidence was offered to prove them and it was proper to instruct the jury that these facts were to be accepted as admitted by the parties referred to. The correct general rule is stated in Hogsett v. Smith, Mo. App., 229 S.W.2d 20, 21, as follows: "Where * * * the party not having the burden of proof, admits either in his pleadings or by counsel in open court facts upon which the claim of the proponent rests, the judicial admission not only relieves the proponent from adducing evidence to prove such facts, but bars the opponent himself from disputing them. * * * Furthermore, such an admission allows the court to direct the jury to take the admitted facts as positively settled, and the proponent is entitled to have the jury so instructed." See, also, Coleman v. Jackson County, 349 Mo. 255, 160 S.W.2d 691, 693; Cantrell v. Knight, Mo.App., 72 S.W.2d 196, 198; Thomas v. Aines Farm Dairy, Mo.App., 257 S.W.2d 228, 233. We cannot agree with Wabash's contention that as a general proposition it is error to give an instruction correctly advising the jury that certain facts are admitted. Whether the jury should be so instructed depends on the nature of the facts. Admitted facts might pertain only to issues of law; for example, facts bearing on capacity to sue or be sued, of which there would be no occasion to advise the jury.

Wabash contends these instructions are erroneous because it was stated therein that Wabash admitted the ownership, operation and control of the railroad tracks "mentioned in the evidence;" that its right of way and railroad track crossed the public road and highway "mentioned in the evidence;" and that Allene Jenkins and Goldie Hutcherson were killed as a direct result of the collision "mentioned in the evidence." Wabash contends that although it made "admissions in the pleadings" it did not make an admission of anything "mentioned in the evidence," and that to tell the jury that it admitted its railroad crossed the public road and highway mentioned in the evidence "impliedly" told the jury that it admitted that the public road and highway had the physical characteristics described in the evidence. Wabash also contends that to tell the jury that Allene Jenkins and Goldie Hutcherson were killed as a direct result of the collision mentioned in the evidence in effect told the jury that it admitted that the collision occurred in the manner mentioned in the evidence, and that it was improper to tell the jury that it owned, operated and controlled "crossings" when it specifically denied that it "owned, operated or controlled" the public road and highway at the crossing."

 These contentions are not entirely without merit, and they demonstrate why in the giving of such instructions a trial judge must exercise extreme caution. It is obvious that these instructions contained matters not really essential to a complete and accurate instruction of the jury. But, there is nothing in the instructions that is not technically correct, and it is only by placing on them somewhat strained and not

immediately apparent meanings that they become subject to the interpretations contended by Wabash.

■ It is true that the admissions in the pleadings, technically speaking, were not to matters "mentioned in the evidence," but there was no evidence of any railroad tracks, or of a public road crossing said tracks, or of a collision at such crossing, except as was intended to be referred to in the pleadings and which all parties and the jury unquestionably understood to be referred to by the instructions. We do not see how the jury could have been misled or confused in this case by the reference to the admitted facts as "mentioned in the evidence," and we do not think that a jury would be caused to believe that Wabash admitted that it owned or controlled the public road or that it admitted the crossing was dangerous or that its speed was excessive under the circumstances. The instructions were not a misdirection in the sense that they were factually incorrect, and if Wabash believed them to have been misleading or confusing it could and should have requested a clarifying instruction. Petty v. Kansas City Public Service Co., 355 Mo. 824, 198 S.W.2d 684; Williams v. Guyot, 344 Mo. 372, 126 S.W.2d 1137.

Wabash also contends that it did not admit that plaintiffs' respective wives were passengers in the automobile or that Ruby Klein was operating the automobile. But the intructions did not say that it did. On the contrary, it was specifically stated in the first paragraph of each instruction that Wabash admitted certain facts to be true, and in the second paragraph of each instruction that defendant Herman Klein admitted certain other facts to be true. The facts concerning who were passengers and who was operating the car were specifically stated to be admissions of Herman Klein. There was no dispute in the trial as to who was operating the automobile and who the passengers were, and we do not see how Wabash could have been prejudiced.

■ The last contention of Wabash is that the trial court erred in giving instructions 2 and 7, which are identical except for names. These are verdict directing instructions, and they submitted negligence of Wabash in operating its train over a heavily traveled and obstructed crossing at a dangerous and excessive speed in view of the circumstances and conditions. The only challenge to these instructions, other than those previously discussed pertaining to whether there was evidence to support the submission, is that "they fail to require the jury to find that Wabash knew or should have known that the crossing was heavily traveled by the public or that it was unusually dangerous." Wabash relies primarily on Banta v. Union Pac. R. Co., 362 Mo. 421, 242 S.W.2d 34, 42, which is not a comparable case on the facts but which holds that "an instruction submitting plaintiff's case to the jury and predicating his recovery must include all the essential elements of plaintiff's case," and on Hicks v. Chicago, M., St. P. & P. R. Co., Mo.App., 233 S.W.2d 787. In this latter case plaintiff drove his automobile into the side of a boxcar of a train which was stopped over a crossing at night. Wabash relies on the holding that the railroad was not negligent in failing to give a special warning that the train was stopped over the crossing unless there were "special circumstances which made the crossing peculiarly hazardous," and that "The exceptional condition making the doctrine applicable must be one known to the railroad company, or one which had existed for such length of time that the company in the exercise of ordinary care should have known that the crossing was unusually dangerous." Respondents rely principally on Herrell v. St. Louis-San Francisco Ry. Co., 322 Mo. 551, 18 S.W.2d 481, and on Benton v. Thompson, 236 Mo.App. 1000, 156 S.W.2d 739, (certiorari quashed in State ex rel. Thompson v. Shain, 349 Mo. 1075, 163 S.W.2d 967), where instructions substantially the same as those in this case were approved. See also, Hein v. Terminal

R. Ass'n, of St. Louis, 359 Mo. 946, 224 S.W.2d 963, and Homan v. Missouri Pac. R. Co., 334 Mo. 61, 64 S.W.2d 617. But, as pointed out by Wabash, the objection to the instructions which it raises in this case apparently was not specifically presented in the two cases relied on by respondents.

We think it is an essential element of Wabash's liability that it had either actual or constructive knowledge of the circumstances which authorized the jury to find that the crossing was an "unusually dangerous crossing for public use." In this case if the jury found the existence of the conditions and circumstances which authorized a finding that the crossing was unusually dangerous, those conditions and circumstances were by their nature of the type which necessarily had existed for a substantial time and of which the railroad would be charged with knowledge, Carbone v. Boston & Maine R., 89 N.H. 12, 192 A. 858, Poe v. Chesapeake & O. Ry. Co., D.C., 64 F.Supp. 358, and therefore, having actual or constructive knowledge thereof Wabash should have known that the crossing was dangerous. The situation here comes within the language of the Hicks case in that the evidence shows that the "special circumstances" had existed for such length of time that Wabash should have known that the crossing was dangerous. The precise question then is whether it was prejudicially erroneous for plaintiffs' verdict directing instructions to fail to require a finding that Wabash knew or should have known of the existence of those special circumstances. The language used in Hatfield v. Thompson, Mo.Sup., 252 S.W.2d 534, 543, is particularly appropriate. In that case the plaintiff sought damages for injuries when he stepped into a hole in the railroad right of way. The instructions submitting plaintiff's case did not require the jury to find that defendant had knowledge of the existence of the hole although "Such knowledge, actual or constructive, [was] unquestionably a prerequisite of defendant's liability." It was stated that "where the defect is of such a nature that the finding of its existence carries with it the clear inference of knowledge of defendant of its prior existence, an instruction omitting such a finding cannot be said to be prejudicially erroneous." In the Hatfield case it was held that the proof of the existence of the hole did not give cause to such an inference, and for that reason the instruction was erroneous. But here the conditions and circumstances are more of the nature of those in Schonlau v. Terminal R. Ass'n, of St. Louis, 357 Mo. 1108, 212 S.W.2d 420, 424, where the plaintiff alleged injury resulting from an unsafe place to work. It was there said: "Plaintiff's chief instruction covering the whole case did not require the jury specifically to find that defendant had actual or constructive notice of the unsafe condition of the passageway floor. It is better practice to require such a finding but the failure to do so here is not fatal because the required findings of the instruction import knowledge of the unsafe condition of the floor on the part of defendant." We rule that the instructions in this case were not prejudicially erroneous.

■ We turn now to the assignments of error of appellant Klein. The verdict directing instructions of respondent Jenkins and of respondent Hutcherson submitted as the negligence of Ruby Klein that she "did fail to keep a watch to the right or west as she drove her said automobile onto the railroad track mentioned in the evidence at said crossing." Appellant Klein first contends, that the instructions were erroneous because there was no substantial evidence that Ruby Klein failed to keep a watch to the right.

■ It may be conceded that it is erroneous to submit a theory of negligence to the jury of which there is no substantial evidence. Pennington v. Carper, Mo.Sup., 309 S.W.2d 596; Levin v. Caldwell, Mo. Sup., 285 S.W.2d 655. There was no testimony of an eyewitness to the accident except that of the fireman, and he testified that while he could see the passenger in

the front seat of the automobile he could not see the driver. Therefore, there was no direct testimony that Ruby Klein did or did not look to the right. Appellant Klein seeks to rely on the rule that in the absence of evidence to the contrary, it is presumed that a person exercised proper care. See Ruhl v. Missouri Pacific Railroad Company, Mo.Sup., 304 S.W.2d 16; Fox v. Missouri Pac. R. Co., 335 Mo. 984, 74 S.W.2d 608. But, in this case the fireman testified that as the train approached the crossing he could and did see all of the Klein automobile "sitting in the clear" at a place where it was almost level and at a place where he could see the front seat passenger. Therefore, the automobile was at a place where the driver could have seen the approaching train if she had looked. Appellant Klein argues that since the fireman could not see the driver then the driver could not see the train, but this does not necessarily follow. See Wolf v. New York, C. & St. L. R. Co., 347 Mo. 622, 148 S.W.2d 1032, 1035. The automobile was headed south, and it was about 1 o'clock in the afternoon. The sun or even the reflection of light on the windshield could have prevented the fireman from seeing the driver without preventing the driver from seeing the train. In addition, as it is the duty of a driver to turn his head, if necessary, to look down a railroad track he is preparing to cross, it is also his duty to lean forward or sideways a little, if necessary, in order to look down a railroad track. The full length of the automobile was within the view of the fireman, and there can be no question but that by some small movement on the part of the driver, if even that were necessary, she could have seen the approaching train if she had looked at all.

■ Appellant relies on Levin v. Caldwell, Mo.Sup., supra [285 S.W.2d 659], in support of his position that there was no substantial evidence that Ruby Klein did not keep a watch to the right. In that case when the defendant was farther than five feet from the intersection he could not see the car in which plaintiff was riding because of obstructions, but defendant testified that when his car was four or five feet from the intersection he actually saw the other car. The court said this: "If * * * there was no substantial evidence from which a jury reasonably could have found that [defendant] Caldwell could, in the exercise of the highest degree of care, have seen the Kotelov car sooner than he did see it, then, it must follow that there was no substantial evidence that Caldwell failed to keep a lookout and hence the submission was error." Here there was substantial evidence that Ruby Klein could have seen the approaching train when her car was stopped near the tracks in a position of safety, and that she then drove onto the tracks directly in front of the approaching train. Therefore, the Caldwell case does not directly support appellant Klein's position in view of the facts. The only reasonable inference which can be drawn from the evidence is that Ruby Klein either failed to look at all, that is, she failed to keep a watch to the right, or that if she did look to the right she looked in such a negligent and careless manner that the effect was the same as not looking at all. See Tepel v. Thompson, 359 Mo. 1, 220 S.W.2d 23. We conclude that in view of the testimony of the fireman there was no presumption of due care on the part of Ruby Klein, Gerhard v. Terminal Railroad Ass'n, of St. Louis, Mo.Sup., 299 S.W.2d 866, 872; Zlotnikoff v. Wells, 220 Mo.App. 869, 295 S.W. 129, 130–131, and that there was substantial evidence to support the reasonable inference that Ruby Klein was negligent under the circumstances in failing to keep an effective watch to the right or west as she approached and drove onto the railroad tracks.

■ Appellant Klein next contends that the same instructions were erroneous because they did not include the requirement that the jury also find that Ruby Klein could have seen the train in question in

time to have avoided the collision. Appellant relies on the holding in Hooper v. Conrad, 364 Mo. 176, 260 S.W.2d 496, to the effect that where the evidence presents two or more divergent sets of facts, under one of which plaintiff would be entitled to recover and under one of which he would not, then a verdict directing instruction should hypothesize the facts essential to support the verdict. However, appellant Klein admits that in this case "it is not so much that the facts are divergent as that the inferences which may be drawn from the facts are divergent."

Under the facts of this case it is unrealistic to say that a jury composed of persons of ordinary intelligence would have to be told that before they could find that Ruby Klein was negligent in failing to look to her right down the railroad track as she prepared to cross it that it must first find that by looking she could have seen the train in time to avoid the collision, when the only evidence was that as the train approached the crossing the Klein automobile was in plain and full view of the fireman, and that the automobile was standing still in a position of safety. In Fortner v. St. Louis Public Service Co., Mo.Sup., 244 S.W.2d 10, 14, under the factual situation in that case it was said: "In a primary negligence case it should be sufficient if a jury is authorized to find that a defendant was negligent specifically in failing to keep a proper lookout, * * * and that such negligence directly caused plaintiff's injuries. * * * We think it unnecessary to submit the further hypothesis that by keeping a proper lookout defendant could have seen plaintiff." See also, Lanio v. Kansas City Public Service Co., Mo.Sup., 162 S.W.2d 862, 866; Nelson v. Evans, 338 Mo. 991, 93 S.W.2d 691, 693; Trzecki v. St. Louis Public Service Co., Mo.Sup., 258 S.W.2d 676; Brown v. Toedebush Transfer, 354 Mo. 611, 190 S.W.2d 239, 240. We recognize that in most cases it would be better to hypothesize the matters complained of

here, see Creech v. Riss & Company, Mo. Sup., 285 S.W.2d 554, and Anderson v. Bell, Mo.Sup., 303 S.W.2d 93, and that the careful lawyer would have done so in this case. But, by reason of the factual situation presented we do not consider the instructions to be prejudicially erroneous.

■ Appellant Klein next contends that respondents' verdict directing instructions submitting the negligence of Ruby Klein were erroneous because they failed to require the jury to find that Allene Jenkins and Goldie Hutcherson were in the exercise of ordinary care for their own safety. Appellant Klein pleaded that they were contributorily negligent, but he did not request an instruction submitting this defense and none was given.

"Plaintiff's principal instructions in a primary negligence case are required to refer to defendant's pleaded affirmative defense of contributory negligence only if there is substantial evidence to support it, * * * and not then if this defense, when supported by substantial evidence, is submitted to the jury by instructions given at the request of the defendant." Ketcham v. Thomas, Mo.Sup., 283 S.W.2d 642, 647. The view is also entertained by some that the pleaded affirmative defense of contributory negligence should be treated as abandoned, even when supported by substantial evidence, if the defendant does not request an instruction thereon. Raymond, Missouri Instructions, perm. ed., § 125, 1959 pocket part. However, the courts have not specifically so held and there is language to the contrary. See Sanders v. Illinois Central R. Co., 364 Mo. 1010, 270 S.W.2d 731. But, in any event, no prejudicial error resulted in this case because there was no substantial evidence to support the defense of contributory negligence.

■ Appellant makes no mention whatever in his brief of any evidence which he contends constitutes substantial evidence of contributory negligence on the

part of Allene Jenkins. He asserts, however, that if the evidence tends to convict Ruby Klein of negligence "there is certainly no doubt of Mrs. Hutcherson's negligence" because the "evidence conclusively shows that Mrs. Hutcherson could have seen the train if she had been looking." We do not doubt that the evidence indicates that Mrs. Hutcherson, the front seat passenger, could have seen the train, but as a guest passenger she was chargeable only with ordinary care, and in the exercise of that care she was not required to keep a constant lookout and to make suggestions to the driver of the automobile in which she was riding. In the absence of visible lack of caution of the driver or known imminence of danger, a guest ordinarily may rely on a driver who has exclusive control of the vehicle. Ketcham v. Thomas, supra, 283 S.W.2d at page 645; Toburen v. Carter, Mo.Sup., 273 S.W.2d 161, 164. Ruby Klein drove the automobile to a position of safety near the tracks and stopped. Therefore, assuming that Mrs. Hutcherson was fully aware of the presence of the crossing and that it was dangerous, this conduct of the driver would indicate the exercise of proper care, not a lack of caution. There is no evidence whatever from which it can even be inferred that within the time that either passenger could have said or done anything to prevent the collision, there was any visible lack of caution on the part of Ruby Klein or imminence of danger known to Allene Jenkins or Mrs. Hutcherson. Therefore, there was no substantial evidence of contributory negligence, and plaintiffs were not required to negative in their verdict directing instructions the pleaded affirmative defense of contributory negligence.

■ Appellant Klein next complains of a sole cause instruction given at the request of Wabash, which submitted as the sole proximate cause of the collision the negligence of Ruby Klein in that by the exercise of the highest degree of care she "could have then seen or heard the approaching train." This instruction did not direct a verdict *against* appellant Klein, but only directed that if the jury found the facts as hypothesized it should then find in *favor* of Wabash. We note that the instruction would have been subject to criticism on the part of plaintiff-respondents because of its cryptic submission that "defendant Wabash was not negligent." See Ketcham v. Thomas, Mo.Sup., 283 S.W.2d 642, 651.

The substance of appellant Klein's contention is that in a sole cause instruction given at the request of one codefendant in which it is submitted that the proximate cause of plaintiff's injuries was the sole negligence of another codefendant, then the negligence submitted in the sole cause instruction as the sole proximate cause cannot be broader than that charged by the plaintiff against that codefendant. In other words, appellant Klein contends that it was prejudicial error as to him for Wabash to hypothesize in its sole cause instruction that the sole proximate cause of the collision was, in substance, the negligence of Ruby Klein in failing to look *or listen* when plaintiffs submitted to the jury only the negligence of Ruby Klein in failing to look. The hypothesization that Ruby Klein was negligent in that she did not listen was supported by the evidence, and if plaintiffs had sued Wabash alone it would have been entitled to submit as the sole proximate cause of plaintiffs' injuries the negligence of Ruby Klein in failing to look or to listen or both. See Happy v. Blanton, Mo.Sup., 303 S.W.2d 633, and the discussion there concerning sole cause instructions.

Appellant Klein relies on Berry v. Kansas City Public Service Co., 341 Mo. 658, 108 S.W.2d 98 and Bowman v. Moore, 237 Mo. App. 1163, 167 S.W.2d 675. In the Berry case a streetcar passenger sued the transit company and a railroad for injuries received in a crossing collision. An instruction of the transit company provided that if the jury found that the railroad was

guilty of humanitarian negligence as to the transit company its verdict on plaintiff's claim should be against the railroad "even though you should further find and believe from the evidence that plaintiff's injuries were contributed to by negligence" of the transit company. An instruction of the railroad provided that if the jury found that the transit company violated certain statutory requirements then the verdict was to be in favor of the railroad. Neither instruction purported to be a sole cause instruction, and both were held to be erroneous on the complaint of the other defendant, and we agree with that conclusion. In the Bowman case one defendant offered a sole cause instruction which submitted as the sole proximate cause of plaintiff's injuries the negligence charged against the codefendant and also the failure to maintain a lookout, which plaintiff had pleaded but had not submitted and therefore had abandoned. The instruction did not direct a verdict against the codefendant but only authorized a verdict in favor of the defendant submitting the instruction. The Kansas City Court of Appeals held that the charge of negligence that the defendant failed to maintain a lookout "had been abandoned by plaintiff and should not have been included in any other instruction," and it was stated that "Almost the identical situation was held to be in error by the Supreme Court in Berry v. Kansas City Public Service Company, supra." This was the only authority cited.

 Assuming the sole cause instruction was otherwise correct, we cannot agree that the Berry case required or even supported the result reached in the Bowman case. While a defendant can complain of an instruction given at the request of a codefendant which affects the question of his liability to the plaintiff, Berry v. Kansas City Public Service Co., supra; State ex rel. Nevins v. Hughes, 347 Mo. 968, 149 S. W.2d 836, " 'It is well settled that a defendant will not be heard to complain of an instruction on the ground that it is too favor-

able to its codefendant, or that it prevented a joint verdict against both.' " Berry v. Kansas City Public Service Co., supra [341 Mo. 658, 108 S.W.2d 103]; Barr v. Nafziger Baking Co., 328 Mo. 423, 41 S.W.2d 559, 563. When one defendant submits a proper sole cause instruction in form, see Borgstede v. Waldbauer, 337 Mo. 1205, 88 S.W.2d 373; Bootee v. Kansas City Public Service Co., 353 Mo. 716, 183 S.W.2d 892; Happy v. Blanton, supra, he may hypothesize the facts supported by the evidence upon which his defense is based, and he is not necessarily restricted to those facts of plaintiff's theory against him or against his codefendant. Borgstede v. Waldbauer, supra. Insofar as Bowman v. Moore holds to the contrary it is disapproved. Appellant Klein does not challenge the sole cause instruction on any basis other than as stated, and in that respect it was not prejudicially erroneous to him.

 Appellant Klein's last contention is that the trial court erred in sustaining an objection of Wabash to certain argument of his counsel "that the crossing was dangerous in that it was without warning devices." The following circumstances gave rise to the contention.

"Mr. Lee: * * * Gentlemen, you can find out in your own experience what can be done to make that crossing safe, less hazardous. Don't they need a warning? There is a track there when they drive along * * *.

"Mr. Ely: Object to it.

"The Court: Sustain that objection, I have not instructed the jury in that regard, and I've limited the law to what the jury can find here.

"Mr. Lee: The position of the defendant Klein in this case is that it is a dangerous crossing, and I don't feel we are limited by what the plaintiff has charged. We say it's a dangerous crossing for other reasons."

We cannot determine from the transcript precisely what Mr. Ely objected to, or the precise basis of the ruling of the trial court. Perhaps that alone would be sufficient reason for holding that we cannot conclude that the trial court erred in its ruling. In his brief appellant Klein says that his counsel intended to argue that there were no signaling devices to warn Ruby Klein of the approach of the train, and that this argument was permissible in support of the defense to plaintiffs' submission of negligence that Ruby Klein did not keep a watch to the right. This seems to be somewhat of a non sequitur, but lack of readily apparent logic in an argument should not make it subject to objection.

We should rule this question on what the purpose of the argument reasonably would appear to be to the trial judge, and counsel stated only that he wanted to argue that the crossing was dangerous for reasons other than that assigned by plaintiffs. We do not rule that appellant Klein could not argue that the absence of signaling devices was the sole proximate cause of the collision without requesting such an instruction, but when no such instruction was requested, then it would reasonably appear that appellant Klein's counsel was going to argue that Wabash was negligent in ways not charged by plaintiff, not on the theory that Wabash's acts were the sole proximate cause of the collision, but on the theory that Wabash was more negligent than Ruby Klein. On this basis the ruling of the court was proper. In view of the failure of appellant Klein to present to the trial court a valid basis for the argument, and in view of what appears to us to have been a reasonable interpretation of the purpose which would make the argument improper, we cannot rule that the trial court erred in sustaining the objection.

The judgment in each case is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.

On Motion for Rehearing.

PER CURIAM.

In its motion for rehearing Wabash contends that we overlooked, and did not discuss, its assignment that the evidence fails to show that the speed of the train was the proximate cause of the collision.

In the principal opinion we stated that Wabash contended that "the evidence does not show that the speed of the train was excessive or that it was the proximate cause of the collision." Following the discussion of the facts and the cases we concluded that it was a jury question whether the crossing was dangerous and "whether under the circumstances it was negligence on the part of Wabash to operate the train over the crossing at the speed shown in the evidence, and if so whether that negligence was the proximate cause of the deaths of Allene Jenkins and Goldie Hutcherson." Obviously the matter was not overlooked, but it is true that we did not extend an otherwise lengthy opinion by a detailed discussion of the issue of proximate cause.

"Generally, it is sufficient to constitute proximate cause that the negligence charged was the efficient cause which set in motion the chain of circumstances leading up to the injury. The test is not whether a reasonably prudent person would have foreseen the particular injury but whether, after the occurrences, the injury appears to be the reasonable and probable consequences of the act or omission of the defendant. The negligence of the defendant need not be the sole cause of the injury. It is sufficient that it be one of the efficient causes thereof, without which the injury would not have resulted." Floyd v. St.

Louis Public Service Company, Mo.Sup., 280 S.W.2d 74, 78; Dickerson v. St. Louis Public Service Company, Mo.Sup., 286 S.W.2d 820, 824. Pentecost v. St. Louis Merchants' Bridge Terminal R. Co., 334 Mo. 572, 66 S.W.2d 533, 536, cited in the principal opinion, is a case involving excessive speed by a train over an unusually dangerous public crossing, and it was there said: "What is a proximate cause is ordinarily a jury question. [citing cases] 'Causal connection, it is true, must be proved by the evidence, as a fact, and not be left to mere speculation and conjecture. The rule, however, does not require that there must be direct proof of the fact itself. This would often be impossible. It is sufficient if the facts proved are of such a nature and are so connected and related to each other, that the conclusion therefrom may be fairly inferred.'" In a somewhat similar case on the facts, Clay v. Missouri Pac. R. Co., Mo.Sup., 5 S.W.2d 409, 412, it was stated: "It cannot be said as a matter of law that no case was made upon the allegation of excessive and dangerous speed of the train. * * * But it would appear to be a question for the jury whether a speed of 45 to 55 miles per hour, through an unincorporated village of two or three hundred population, with the train approaching the crossing where the view is totally obstructed for a number of feet until within 13 feet of the track, constituted negligence. Whether such speed was the proximate cause of the death of Samuel and Lillie Robinson was, we think a question for the jury. The great speed of the train may have contributed materially to the excitement and confusion of the driver, which resulted in the 'stalling' of the automobile on the track."

The two Missouri cases cited by Wabash do not pertain to excessive speed of a railroad train over an unusually dangerous public crossing, and while we do not disagree with the general rules announced therein, the cases are not controlling because of the difference in the factual situations. We are of the view, and we conclude, that there were sufficient facts established by competent evidence and which were related in the principal opinion, from which a jury could reasonably and properly infer that the negligent speed of the train, which the jury necessarily found it to be under the circumstances, did materially concur with the negligence of the operator of the Klein automobile in causing the collision. Therefore, we adhere to the conclusion stated in the principal opinion that the issue of proximate cause was for the jury. See also, Treadway v. United Rys. Co. of St. Louis, 300 Mo. 156, 253 S.W. 1037; Beal v. Chicago, B. & Q. R. Co., Mo.Sup., 285 S.W. 482; Johnson v. Wabash R. Co., 259 Mo. 534, 168 S.W. 713; Herrell v. St. Louis-San Francisco Ry. Co., 322 Mo. 551, 18 S.W.2d 481; Brown v. Chicago, R. I. & P. Ry. Co., Mo. Sup., 252 S.W. 55; Hoelzel v. Chicago, R. I. & P. Ry. Co., 337 Mo. 61, 85 S.W.2d 126; Mullis v. Thompson, 358 Mo. 230, 213 S.W.2d 941; Dirickson v. Thompson, Mo.App., 120 S.W.2d 198.

In appellant Klein's motion for rehearing he challenges only the determination that the evidence disclosed that as the train approached the crossing the Klein automobile was in "plain and full view" of the fireman. Upon careful review of this contention we determine it to be without merit.

The respective motions of appellants Wabash and Klein for a rehearing or for transfer to the court en banc are overruled.